Donald W. **CARLSON, Plaintiff, Appellant,**

v.

**NEW HAMPSHIRE DEPARTMENT OF SAFETY et al., Defendants, Appellees.**

No. 79–1262.

United States Court of Appeals, First Circuit.

Argued Oct. 1, 1979.

Decided Nov. 30, 1979.

---

Robert T. Clark, Concord, N. H., with whom Linda L. Murtha and Cleveland, Waters & Bass, Concord, N. H., were on brief, for plaintiff, appellant.

Arpiar G. Saunders, Jr., Concord, N. H., Glenn G. Geiger, Jr., Penacook, N. H., Stuart A. Steinberg, Robert H. Ballan, John E. Dabuliewicz, Gregory E. Gore, James P. Loring, and Susan Bodine Mitchell, Law Students on brief for Vet Project, Inc., amicus curiae.

Steven J. McAuliffe, Asst. Atty. Gen., Concord, N. H., with whom Thomas D. Rath, Atty. Gen., and Deborah J. Cooper, Asst. Atty. Gen., Div. of Legal Counsel, Concord, N. H., were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and BONSAL,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Plaintiff, a New Hampshire State Trooper, brought an action in the district court claiming his assignment from troop I, patrol # 17, to troop G, which effectuated a change in duties and work schedule, violates the Veterans Readjustment Assistance Act, 38 U.S.C. §§ 2021–2026. The action was submitted for determination on cross-motions for summary judgment.[1] The court denied plaintiff's motion, granted defendants', and entered judgment dismissing the complaint. We reverse.

Plaintiff, who has been employed as a state trooper since 1968, is a member of the military reserves. In the summer of 1978

---

* Of the Southern District of New York, sitting by designation.

1. The mere filing of cross-motions for summary judgment is not equivalent to the submission of a case for final determination on the basis of the various attachments to the motions and any other evidence presented. 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2720 at 466–67 (1973). In the latter situation, the district court may resolve material factual disputes while in the former such resolution is, of course, impermissible. *Thyssen Plastik Anger KG v. Induplas, Inc.,* 576 F.2d 400, 402 (1st Cir. 1978). If parties mean to submit a case on the basis of an agreed upon record, they should so state at the time and indicate either that certain facts are to be taken as true or that the court is to reach its decision on the basis of its assessment of the submitted matter. A loose use of summary judgment may result in serious confusion on appeal as to the extent of the record and the applicable scope of appellate review. Here affidavits were submitted and live testimony was presented, and the district court may have been accorded leeway to assess the credibility of the witness. However, as the cross-motions were premised on the same legal principles and relied on the same basic facts and as the parties appear to have taken the position, with which we agree, that regardless of the credibility resolution no facts material to the resolution of the contested legal issue are in dispute, the procedure used was adequate. *Compare Burke v. National Broadcasting Co., Inc.,* 598 F.2d 688, 689 n.1 (1st Cir.), *cert. denied,* —— U.S. ——, 100 S.Ct. 144, 62 L.Ed.2d 93 (1979).

he informed defendant Knowlton, the director of the division of state police, that his transfer from the New Hampshire Air National Guard to the United States Air Force Reserve required him to attend two six-week training sessions. Upon his return to work after the completion of the first session, Colonel Knowlton informed him that he was transferred from troop I to troop G effective immediately. This transfer resulted in no loss of pay, seniority, or personnel benefits under the state personnel system. Plaintiff's duties and work schedule were, however, changed. I troopers, whose duties include the approval of motor vehicle inspection stations and automobile dealerships, inspection of school buses, and investigation, generally work from 8:00 a. m. to 5:00 p. m. on four days and from 1:00 p. m. to 10:00 p. m. on a fifth. No weekend work is ordinarily required except on holiday weekends when I troopers may supplement the regular highway patrol. G troopers, on the other hand, are assigned to the patrol of interstate highways and work nine-hour rotating shifts which include weekends.[2]

In contrast to G troopers, whose duties may be adequately performed by trooper trainees, I troopers receive some special training to enable them to carry out their tasks. Consequently, a temporary absence from troop I occasions some inconvenience to the service for either the work must await the absentee's return, which may result in some backlog and inconvenience to operators seeking immediate inspection approvals, or else another trooper must be trained for the assignment. In an effort to minimize any disruption which might be caused by plaintiff's military leave, Colonel Knowlton had another trooper trained to fill permanently the slot plaintiff had formerly occupied in troop I and transferred plaintiff to troop G.

Pursuant to State Police Regulation 3.5, troopers are subject to being assigned at any time "to such Bureau, Troop, or Unit as the Director may order, or to any other duty he may deem for the good of the service." A lateral transfer from one troop to another officially constitutes neither a promotion nor a demotion; pay scale, seniority, vacation, and other personnel benefits are unaffected by such transfers. Plaintiff, prior to his service in troop I, had been assigned to troops G and D.

Plaintiff contends his transfer from troop I to troop G because of the absences occasioned by his military obligation violates 38 U.S.C. §§ 2024(d) and 2021(b)(3). The first provides that a reservist away from work to attend a training period of less than three months' consecutive duration "shall be permitted to return *to such employee's position* with such seniority, *status*, pay, and vacation as such employee would have had if such employee had not been absent for [reserve duties] . . .. [emphasis added]." Plaintiff argues that his position within the meaning of § 2024(d) is specifically I trooper, not merely state trooper as defendants contend and as the district court concluded. Section 2021(b)(3) provides that a reservist such as plaintiff "shall not be denied retention in employment or any promotion *or other incident or advantage of employment* because of any obligation as a member of a Reserve component of the Armed Forces [emphasis added]." As we agree with plaintiff that the change in his duties and work schedule because of his military leave constitutes a denial of an incident or advantage of employment and that therefore plaintiff must be restored to troop I, we need not and do not reach the separate issue whether § 2024(d) was also violated.[3]

---

**2.** Plaintiff's schedule now requires him to work three out of four weekends.

**3.** Defendants argue that plaintiff referred to § 2021(b)(3) in the district court only to support his argument that the word "position" in § 2024(d) must be interpreted to mean "same job duties and hours" and that plaintiff may not for the first time on appeal argue defend-

ants violated § 2021(b)(3). Defendants are incorrect. Plaintiff's complaint states that his action arises under 38 U.S.C. §§ 2021–2026 and plaintiff argued in his district court brief in support of his motion for summary judgment: "There is no doubt that a comparison of the position held by the plaintiff in this action before and after his military leave of absence points unalterably to a denial of an 'incident or

Section 2021(b)(3) is meant to preclude an employer from disadvantaging a covered employee because of his reserve obligations. We cannot say that the transfer, due to plaintiff's reserve training, from a basically 8 to 5 weekday job to one with weekend work and shifts which may fall during any hour of the day or night is not a denial of an incident or advantage of employment.[4] The fact that plaintiff has no vested right under state law in the particular work assignment he filled prior to his military leave and was subject to being reassigned at the discretion of the Director does not alter our conclusion that § 2021(b)(3) prohibits the Director from transferring plaintiff "because of"[5] his reserve obligation. True, the Director would be free to transfer plaintiff at any time, including while his reserve duties were in progress, for reasons unrelated to his reserve obligations; but the Director was not free to transfer him to an assignment involving denial of a previously enjoyed incident or advantage of employment *for reasons causally related to the employee's reserve obligations*. Here there can be no doubt that the reason for the transfer was so related.

Nor is it sufficient that defendants treated plaintiff as they would have treated any employee on a leave of absence. Under § 2021(b)(3) reservists are "entitled to the same treatment afforded their coworkers not having such military obligations . .." S.Rep.No.1477, 90th Cong., 2d Sess., at 2, U.S.Code Cong. & Ad.News 3421 (1968).

(legislative history of § 9(c)(3) of the Military Selective Service Act of 1967, a predecessor statutory provision to § 2021(b)(3)). The mandated standard of comparison is not, as defendants would maintain, to "those coworkers away on non-military leave of absence" but to the more embrasive class of "coworkers not having [reserve] obligations." *See Lott v. Goodyear Aerospace Corp.*, 395 F.Supp. 866, 869–70 (N.D.Ohio 1975) (rejecting argument that predecessor provision to § 2021(b)(3) requires only that reservists be treated the same as employees furloughed for non-military reasons); *see also Monroe v. Standard Oil Co.*, 446 F.Supp. 616, 620 (N.D.Ohio 1978), and *Kidder v. Eastern Airlines, Inc.*, 469 F.Supp. 1060, 1067 (S.D.Fla.1978) (rejecting the same argument). Defendants' restrictive interpretation of § 2021(b)(3) would be at odds with the liberal interpretation generally accorded legislation of this nature. *Alabama Power Co. v. Davis*, 431 U.S. 581, 584, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977); *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946).

Because plaintiff was improperly transferred from troop I patrol # 17 to troop G in violation of 38 U.S.C. § 2021(b)(3), he must be restored to his former work assignment. 38 U.S.C. § 2022. The judgment of the district court is vacated, and the court is directed to enter summary judgment for plaintiff.[6]

*So ordered.*

---

advantage' of his employment." We think the argument was presented sufficiently below to enable plaintiff to press it on appeal.

**4.** While it has been held that an employer may restore a veteran returning from active service to a different· shift than he had previously worked, *Boone v. Fort Worth & Denver RR Co.*, 223 F.2d 766 (5th Cir. 1955); *McCormick v. Carnett-Partsnett Systems, Inc.*, 396 F.Supp. 251, 254 (M.D.Fla.1975); *Grubbs v. Ingalls Iron Works Co.*, 66 F.Supp. 550 (N.D.Ala.1946), these cases were decided under statutory provisions which only require that the veteran be restored to his former position *or* to a position of like seniority, status, and pay; they are not controlling in determining the rights of a reservist under 38 U.S.C. § 2021(b)(3).

**5.** We are aware of defendants' purported distinction that the reason for plaintiff's transfer was not his military obligation per se but was the needs of the service occasioned by his two six-week absences. This semantic distinction does not change the fact that but for plaintiff's reserve commitment he would not have been transferred from troop I to G.

**6.** We need not now decide to what extent an employer would ever, in truly exceptional circumstances, be justified in making a change in a reservist's work schedule because of the effect the anticipated absences would have on the employer's business. If there are circumstances where the employer's business would be so greatly disrupted by a reservist's temporary military leave that some accommodation would be in order, this is not one of them.

Defendants' evidence, taken most favorably to them, would not support a finding that exceptional hardship would have occurred had not plaintiff been transferred. Whether the replacement for plaintiff was temporary, which would have been permissible, or permanent, which we have concluded is forbidden by 38 U.S.C. § 2021(b)(3), another trooper still had to be trained to perform troop I type work.