**Patrick F. BOYLE, et al.**

v.

**BOARD OF POLICE COMMISSIONERS OF the CITY OF PORTSMOUTH, et al.**

**No. C–88–230–L.**

United States District Court, D. New Hampshire.

Jan. 20, 1989.

---

Ina Schiff, Providence, R.I., for Patrick F. Boyle, John A. Centola and James F. Prendergast.

Spaloss and Rosson by Henry F. Spaloss, Nashua, N.H., Ina Schiff, Providence, R.I., for Patrick F. Boyle.

Cleveland, Waters and Bass, P.A. by Wayne C. Beyer, Concord, N.H., for Bd. of Police Com'rs of the City of Portsmouth, N.H., Joseph R. Yergeau, Mark G. Kelliher, Peter Weeks, Ruth Griffin, and Raymond W. LaBrie.

## ORDER ON MOTION TO DISMISS

LOUGHLIN, District Judge.

Plaintiff Boyle was appointed a police officer by the City of Portsmouth on July 1, 1985. Plaintiff Centola at all times material to this case has been employed as a police officer by the City of Portsmouth. Plaintiff Prendergast was employed as a police officer by the City of Portsmouth between March, 1977 and April, 1988. Defendant Board of Police Commissioners of the City of Portsmouth is the policy making body for the city's police force. The Board exercises its control under state law, holds administrative hearings and renders decisions on police personnel actions.

Defendant Yergeau is the Chairman of the Board of Police Commissioners. Defendant Kelliher is the Clerk of the Board of Police Commissioners; Defendant Weeks is a member of the Board of the Police Commissioners; Defendant Griffin was formerly Chairman of the Board of Police Commissioners of the City of Portsmouth and Defendant Labrie was formerly City Marshal/Chief of Police for the City of Portsmouth.

Plaintiffs allege that the defendants have maintained a policy or custom which obviates police officers from serving as active members of the military reserve or national guard in violation of 38 U.S.C. § 2021 (the Vietnam Era Veterans' Readjustment Assistance Act or VEVRA), 42 U.S.C. § 1983, and New Hampshire law, RSA § 110–B:65.

In defendants' Motion to Dismiss they state that 38 U.S.C. § 2021 *et seq.* provides protection only to members of the Reserve components of the United States military who suffer damages in their civilian employment as a result of such membership. The defendants further state that the statute was amended in 1986 and has no retroactive application.

Defendants also allege that 42 U.S.C. § 1983 provides relief to those who have

suffered damages as a result of a state official, acting under color of state law, violating their constitutional rights.

Defendants further state that RSA 110–A:75 (now RSA 110–B:65) prior to 1985 did not allow for a private cause of action to be brought against those who discriminate against those who are or express interest in becoming members of the New Hampshire National Guard.

In ruling on a motion to dismiss, the material facts alleged in the complaint are to be construed in the light most favorable to the non-moving party, and taken as admitted with dismissal ordered only if the (non-moving party) is not entitled to relief under any set of facts they could prove. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir.1976). Upon review of a complaint before receipt of any evidence, the issue is not whether the non-moving party will ultimately prevail or is likely to prevail, but is whether the non-moving party is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Perhaps the leading United States Supreme Court case is *Monroe v. Standard Oil Co.*, 452 U.S. 549, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981), a five/four decision cited by both parties in their briefs. In essence, the sharply divided court stated that 38 U.S.C. § 2021(b)(3), a provision of the Vietnam Era Veterans' Readjustment Assistance Act of 1974, does not require an employer to provide preferential scheduling of work hours for an employee who must be absent from work to fulfill his military reserve obligations.

*Monroe* discusses in some detail the chronological and historical background of veterans' rights regarding employment and re-employment.

Statutory re-employment rights for veterans date from the Nation's first peacetime draft law, passed in 1940, which provided that a veteran returning to civilian employment from active duty

was entitled to reinstatement to the position that he had left or one of "like seniority, status, and pay." 38 U.S.C. § 2021(a). In 1951, in order to strengthen the Nation's Reserve Forces, Congress extended reinstatement rights to employees returning from training duty. See Pub.L. 51, ch. 144, § 1(s), 65 Stat. 75, 86–87. Thereafter, the Reserve Forces Act of 1955, Pub.L. 305, ch. 665, § 262(f), 69 Stat. 598, 602, provided that employees returning from active duty of more than three months in the Ready Reserve were entitled to the same employment rights as inductees, with limited exceptions. In 1960, these re-employment rights were extended to National Guardsmen, Pub.L. 86–632, 74 Stat. 467. See 38 U.S.C. § 2024(c). In addition, a new section, now codified at 38 U.S.C. § 2024(d), was enacted in 1960 to deal with problems faced by employees who had military training obligations lasting less than three months. This section provides that employees must be granted a leave of absence for training and, upon their return, be restored to their position "with such seniority, status, pay, and vacation" as they would have had if they had not been absent for training. *Monroe*, 452 U.S. at 554–55, 101 S.Ct. at 2514.

Defendants contend that, at the time all of the plaintiffs were seeking employment with the defendant, the police department could lawfully refuse to hire members of the reserves. 38 U.S.C. § 2021(b)(3).

■■■ The Vietnam Era Veterans' Readjustment Assistance Act is to be construed liberally in favor of the employee reservist. In requiring an employer to grant a request for a leave of absence for a period required to perform active or inactive duty training, the court evaluates the reasonableness of the request for leave, in light of the circumstances giving rise to the request and the requirements of the employer. *Bottger v. Doss Aeronautical Services, Inc.*, 609 F.Supp. 583 (M.D.Ala.1985).

It may be stated that the purpose of the Act is two-fold: to protect the returning veteran who in many cases has put his life

on the line for the well-being of all of us by ensuring that the job or employment he had is there to return to and additionally, in these troubled times with wars and threats of imminent wars, to maintain the state of armed readiness that is necessary at all times. In order to maintain this state of readiness, an alert trained militia is mandated. Those of us who serve, for whatever motive, must be protected from the vicissitudes of job security and not be immolated upon the vagaries of an employer who may not be endowed with any sense of patriotism or altruism.

■ 38 USCS § 2021(b)(3) must be construed as requiring employers to grant the reservists a leave of absence in order to participate in military training regardless of whether the training is at the initiative of reservist or at the service's initiative. *Green v. Spartan Stores, Inc.*, 112 L.R. R.M. (BNA) 2099, 1982 WL 1969 (W.D. Mich.1982).

In a case from this district, *Carlson v. New Hampshire Department of Safety*, 609 F.2d 1024 (1st Cir.1979), summary judgment for the defendants was reversed in a somewhat analogous situation. Plaintiff, a state trooper, was a member of the United States Air Force Reserve. After returning from reserve duty he was transferred to a different troop where his work hours were not as favorable. The court went on to state:

> Nor is it sufficient that defendants treated plaintiff as they would have treated any employee on a leave of absence. Under § 2021(b)(3) reservists are "entitled to the same treatment afforded their coworkers not having such military obligations...." S.Rep. No. 1477, 90th Cong., 2d Sess., at 2, U.S.Code Cong. & Ad.News 3421 (1968) (legislative history of § 9(c)(3) of the Military Selective Service Act of 1967, a predecessor statutory provision to § 2021(b)(3)). The mandated standard of comparison is not, as defendants would maintain, to "those coworkers away on non-military leave of absence" but to the more embrasive class of "coworkers not having [reserve] obligations." *See Lott v. Goodyear Aero-*

*space Corp.*, 395 F.Supp. 866, 869–70 (N.D.Ohio 1975) (rejecting argument that predecessor provision to § 2021(b)(3) requires only that reservists be treated the same as employees furloughed for nonmilitary reasons); *see also Monroe v. Standard Oil Co.*, 446 F.Supp. 616, 620 (N.D.Ohio 1978), and *Kidder v. Eastern Airlines, Inc.*, 469 F.Supp. 1060, 1067 (S.D.Fla.1978) (rejecting the same argument). Defendants' restrictive interpretation of § 2021(b)(3) would be at odds with the liberal interpretation generally accorded legislation of this nature. *Alabama Power Co. v. Davis*, 431 U.S. 581, 584, 97 S.Ct. 2002 [2004–05], 52 L.Ed.2d 595 (1977); *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285, 66 S.Ct. 1105 [1111], 90 L.Ed. 1230 (1946).

*Carlson*, 609 F.2d at 1027.

■ Plaintiffs claim a continuing violation of VEVRA in that the defendants have and continue to maintain a policy which prohibits membership in the active reserves or national guard by police officers and requires police recruits to resign from active reserve participation as a condition of employment.

A motion to dismiss is one of limited inquiry. The standard for granting a motion to dismiss is not the likelihood of success on the merits, but whether the plaintiff is entitled to offer evidence to support his claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint should not be dismissed unless it appears that appellant could "prove no set of facts in support of his claim which would entitle him to relief." *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969).

Whether the plaintiff can recover damages for his lack of reserve employment or that VEVRA specifically protects only civilian employment appears to be a gray area of the law. A liberal interpretation of the Act might approve awarding a successful plaintiff damages in this respect. Defendants' Motion is denied.

Claims of the Plaintiffs under 42 U.S.C. § 1983.

In *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1979) the Supreme Court in essence stated that § 1983 is not ambiguous and went further stating:

> The question before us is whether the phrase "and laws," as used in § 1983, means what it says, or whether it should be limited to some subset of laws. Given that Congress attached no modifiers to the phrase, the plain language of the statute undoubtedly embraces respondents' claim that petitioners violate the Social Security Act.
>
> Even were the language ambiguous, however, any doubt as to its meaning has been resolved by our several cases suggesting, explicitly or implicitly, that the § 1983 remedy broadly encompasses violations of federal statutory as well as constitutional law. *Rosado v. Wyman,* 397 U.S. 397 [90 S.Ct. 1207, 25 L.Ed.2d 442] (1970), for example, "held that suits in federal court under § 1983 are proper to secure compliance with the provisions of the Social Security Act on the part of participating States." *Edelman v. Jordan,* 415 U.S. 651, 675 [94 S.Ct. 1347, 1362, 39 L.Ed.2d 662] (1974). *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 700–701 [98 S.Ct. 2018, 2041, 56 L.Ed.2d 611] (1978), as support for its conclusion that municipalities are "persons" under § 1983, reasoned that "there can be no doubt that § 1 of the Civil Rights Act [of 1871] was intended to provide a remedy, to be broadly construed, against all forms of official violation of federally protected rights."

*Id.* at 4–5, 100 S.Ct. at 2504.

Congress has to specifically foreclose the 1983 remedy. *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1980).

As plaintiffs allege a violation of a federal statute through an official policy, the motion to dismiss claims under 42 U.S.C. § 1983 is denied.

Plaintiffs agree that RSA 110–A:75 did not authorize a private cause of action until 1985.

Both plaintiffs Prendergast and Centola allege that the defendants have and are continuing to violate the New Hampshire Statutes since 1985 and to date.

Defendants' motion to dismiss plaintiffs Prendergast and Centola's actions under RSA 110–A:75 is denied.