PAUL J. THOMAS & others[1] *vs.* DEPARTMENT OF STATE POLICE.

No. 02-P-1067.

Barnstable. November 10, 2003. - September 2, 2004.

Present: GREENBERG, BERRY, & McHUGH, JJ.

*State Police. Police,* Collective bargaining, Retirement, Injury on duty, Tenure, Compensation. *Public Employment,* Collective bargaining, Retirement, Reinstatement of personnel, Salary. *Statute,* Construction. *Words,* "Position."

This court concluded that G. L. c. 32, § 8(2), did not, either in its plain meaning or implicitly, entitle State troopers who were reinstated to the police force following disability retirement, to the same pay grade or level of seniority that they may have had at the time of their retirement; further, this court concluded that the terms of employment upon reinstatement under § 8(2) could be governed by a collective bargaining agreement, and that the subject collective bargaining agreement in effect at the time of the events of this case controlled the terms of the plaintiff State troopers' reinstatement with respect to such pay grade and level of seniority determination. [752-757]

CIVIL ACTION commenced in the Superior Court Department on September 22, 2000.

A motion for judgment on the pleadings was heard by *Richard F. Connon,* J., and a question of law was reported by him to the Appeals Court.

*Kathryn M. Noonan (Terence P. Noonan* with her) for the plaintiffs.

*Maria Hickey Jacobson,* Assistant Attorney General, for the defendant.

BERRY, J. The issue in this case involves whether, notwithstanding the terms of a collective bargaining agreement, G. L. c. 32, § 8(2)(*a*) and (*b*), which covers the return to work by a

---

[1]James J. Lynch, Franklin M. Nardone, Francis Iula, John F. Gumbleton, and Robert A. Pennini.

public employee to the same "position from which he retired or a similar position within the same department," is to be construed to mean that the plaintiffs, certain troopers returning to the State police force after disability retirement, were entitled not only to the same position in rank and title previously held, but also to a higher pay grade and seniority credits, the level of which the troopers contend they would have achieved had there not been any intervening disability retirement.

The plaintiffs argue that G. L. c. 32, § 8(2)(*a*) and (*b*) (either standing alone, or when read in conjunction with a certain provision in the pension retirement laws), compels the conclusion that they should have been reinstated at a higher level of compensation and with greater seniority credits than they received. The defendant Department of State Police (department) counters that a collective bargaining agreement (CBA) between it and the State Police Association (union) controls the terms of the troopers' return to service, and that the phrases referring to "position" in § 8(2)(*a*) and (*b*)[2] were not intended by the Legislature, and cannot be construed, to override and displace the negotiated terms of reinstatement to the department as set forth in the CBA.

---

[2]General Laws c. 32, § 8(2)(*a*), as amended by St. 1998, c. 252, § 2, provides, in pertinent part:

> "If, after two years of the date that a member [of a contributory retirement system] is retired [to disability leave], the regional medical panel determines that the retired member is qualified for and able to perform the essential duties *of the position from which he retired or a similar position within the same department*, as determined by the personnel administrator, *said member shall be returned to said position, provided the position is vacant*" (emphasis added).

General Laws c. 32, § 8(2)(*b*), as amended by St. 1996, c. 306, § 16, provides, in pertinent part:

> "Any creditable service in effect for [a member of a contributory retirement system] at the time of his retirement for disability shall thereupon be restored to full force and effect [upon his return to work], and upon his subsequent retirement he shall be entitled to a normal yearly amount of retirement allowance computed as though such disability retirement and reinstatement had not taken place. No additional member contributions shall be required as a precondition of receiving such creditable service."

A Superior Court judge allowed the defendant's motion for judgment on the pleadings. However, given the novel issue presented, pursuant to Mass.R.Civ.P. 64(a), as amended, 423 Mass. 1403 (1996), and G. L. c. 231, § 111, the judge reported questions to this court. We ascertain that the first of the reported questions is outcome determinative.[3] That reported question was as follows:

> "(1) G. L. c. 32, § 8 requires reinstated employees to be returned to the same or similar position from which they retired. Does G. L. c. 32, § 8 implicitly entitle state police officers returning from extended disability retirement to be reinstated at the same pay grade and level of seniority that they enjoyed at the time of their retirement? Or, is this a matter that is subject to negotiation and, thus, properly addressed in the collective bargaining agreement?"

In answer to this question, we hold as follows: the terms of employment upon reinstatement under G. L. c. 32, § 8(2), may be governed by a collective bargaining agreement; G. L. c. 32, § 8(2), does not, either in its plain meaning or implicitly, entitle State troopers who are reinstated to the police force following disability retirement, to the same pay grade or level of seniority that they may have had at the time of their disability retirement; the subject CBA in effect at the time of the events in this case controls the terms of the plaintiffs' reinstatement with respect to such pay grade and level of seniority determination; and there is no conflict between the CBA and G. L. c. 150E, § 7(*d*).

1. *Factual and procedural background.* The background facts set forth in the record may be summarized thusly. Each of the six plaintiffs was injured in the line of duty, was placed on disability retirement (from time to time also referred to as disability leave), and received disability retirement benefits pursuant to G. L. c. 32, § 7. After some passage of time, the plaintiffs applied for reinstatement to the State police force under G. L. c. 32, § 8(2)(*a*), and were found medically qualified for return to such service.

---

[3]The question quoted in the text above was reported by the Superior Court judge. The plaintiffs requested that three additional questions be included in the report. Because the resolution of the first question is outcome determinative, we do not reach the other questions posed by the plaintiffs.

During the periods of their disability retirements, each of the plaintiffs received disability retirement benefits based on achieving trooper first class status, with a step seven salary, prior to retirement. However, upon their return to work, the department's reading of the CBA was that the plaintiffs were to be reinstated as troopers (not troopers first class), with a corresponding salary level of trooper, step one. In addition to this rank classification and attendant salary step level, at reinstatement there was also an issue as to what seniority level applied to the troopers. The department read the CBA as requiring that the returning troopers' seniority began as of the date of their reinstatement. In effect, this meant that the troopers would not have sufficient seniority to bid for overtime and shift and barracks assignments because troopers with less than five years of seniority have no such rights.

The department rejected both the plaintiffs' claims of greater entitlement regarding salary and seniority under the CBA and the plaintiffs' claims that, to the extent that the CBA did not provide for a higher pay step and seniority, the CBA was overridden by G. L. c. 32, § 8(2)(*a*) and (*b*). The union filed for arbitration. In reviewing the CBA, the arbitrator reached a different determination than the department concerning the rank and title to which the plaintiffs were entitled upon reinstatement under the terms of the CBA. The arbitrator found that, as to five of the six plaintiffs (the plaintiff Thomas was the exception), the department had misinterpreted the CBA by ranking the returning officers as troopers, rather than as troopers first class. The arbitrator ordered that five of the plaintiffs be reinstated as troopers first class, step five.[4,5] This salary step yields compensa-

---

[4]The basis for the arbitration determination that a step-up to trooper first class was required under the CBA was that the qualification for trooper first class was five years of service on the State police force and that five of the plaintiffs had met this qualification as of the date of their disability retirement. (The rank of trooper first class was created after certain of the plaintiffs had been placed on disability retirement). This was not true with respect to the plaintiff Thomas, who had worked only two years prior to his disability retirement, and the arbitrator, therefore, read the CBA as placing Thomas as trooper, step one.

[5]Under the CBA, returning troopers are to be paid at the first step of the salary scale for the rank held prior to disability leave; step five is the first step of the trooper first class pay scale.

tion of $903.91 per week. However, the arbitrator agreed with the department that, under the CBA, seniority was calculated as beginning as of the date of the plaintiffs' reinstatement.[6] Having reached these determinations under the CBA, the arbitrator declined to address the plaintiffs' statutorily-based argument, which is the issue presented in this appeal.

Following the arbitration decision, the plaintiffs filed a complaint in Superior Court seeking a declaratory judgment that G. L. c. 32, § 8(2)(*a*) and (*b*), required that the plaintiffs be restored to "the title, rank and pay grade of Trooper First Class, Step 7," and be credited with seniority "as if they had never been involuntarily retired."[7] The complaint also sought an injunction ordering the plaintiffs' reinstatement to trooper first class, step 7, retroactive to the date of reinstatement, with corresponding retroactive back pay; the awarding of additional credits for seniority earned prior to their disability retirement, as well as for the respective periods that the plaintiffs were on disability leave; and the application of the increased seniority credits to all employment-related functions in the State police force, such as barracks assignments.

In granting the defendant judgment on the pleadings, the judge reasoned that because "G. L. c. 32, § 8[(2)(*a*) and (*b*),] is silent on the matters of salary and/or seniority for reinstated State Police officers following involuntary disability retirement,

---

[6]The higher salary step to which the plaintiffs claim they are entitled, i.e., trooper first class, step seven, yields compensation of $949.67 per week. As originally reinstated by the department as trooper, step one, the plaintiffs' salaries would have been $687.19 per week.

[7]The defendant argues that the arbitrator's decision enforcing the CBA should be given preclusive effect so as to foreclose the claims asserted under G. L. c. 32, § 8, as well as to foreclose any legal effects of the statute on the plaintiffs' reinstatement. We need not address, as matter of law, whether the arbitrator's addressing the statutory challenge would have had any binding implication under principles of arbitration law or issue preclusion. The arbitrator expressly disavowed any determination on that issue, stating that he would "make no pronouncements with respect to the purpose of [G. L. c. 32, § 8,] or the intent of the statute or for that matter what the [L]egislature meant by the term 'position' [in G. L. c. 32, § 8]. These are issues that [the arbitrator] consider[ed] beyond the scope of [his] arbitral authority and the scope of the contractual grievance."

there is no conflict[8] and the collective bargaining agreement governs." Then, as previously noted, the judge reported questions of law to this court.

2. *Analysis.* The plaintiffs assert two different, but intertwined, legal theories to support the argument that, under G. L. c. 32, § 8, their salaries and seniority are to be increased. As previously noted, the first argument focuses on the phrase in § 8(2)(*a*) that references reinstatement following disability to the same "position from which [the public employee] retired or a similar position" (for ease of reference, sometimes referred to herein as "the same or similar position"). The second argument seeks to connect the language appearing in G. L. c. 32, § 8(2)(*a*) and (*b*) — particularly § 8(2)(*b*) which refers to the time of "creditable service" in public employment (see note 3, *supra*) — to the provision in G. L. c. 32, § 26, which governs the calculation of pension retirement compensation. We address each of these legal theories *infra.*

a. *The reference to "position" in G. L. c. 32, § 8(2)(a).* The plaintiffs argue that the plain meaning, legislative history, and spirit of the words referencing the same or similar "position" in G. L. c. 32, § 8(2)(*a*), preserve greater employment rights than reinstatement to the same job, title, and rank in the State police. According to the plaintiffs' theory, "position" in § 8(2)(*a*) incorporates all employment-related matters, including but not limited to salary steps, seniority, shift and bidding rights, and any other related benefits, and all of these are to be calculated under § 8(2)(*a*) "as if they [the plaintiffs] had endured no break in service." According to the plaintiff's theory of statutory construction, with respect to any of the enhanced employment rights that are encompassed by the word "position" in § 8(2)(*a*), the statute trumps and overrides any differing provisions of the negotiated CBA.

The black letter text of G. L. c. 32, § 8(2)(*a*) and (*b*), does not support the meaning that the plaintiffs would ascribe to it. Indeed, the statute's text does not reference salary and seniority at all. "Where the language of a statute is plain, it must be interpreted in accordance with the usual and natural meaning of

---

[8]This is a reference to the lack of conflict between the CBA and G. L. c. 150E, § 7(*d*). See note 11, *infra.*

the words." *Gurley* v. *Commonwealth*, 363 Mass. 595, 598 (1973). See generally *Commonwealth* v. *Rahim*, 441 Mass. 273, 275 (2004). "[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Commonwealth* v. *Hinds*, 437 Mass. 54, 63 (2002), cert. denied, 537 U.S. 1205 (2003), quoting from *Commonwealth* v. *Smith*, 431 Mass. 417, 421 (2000). Here, the main legislative objective to be accomplished is the reinstatement of a public employee following disability retirement, to the same or similar position he or she previously held. In contrast, § 8(2)(*a*) does not, in its "usual and ordinary meaning considered in light of the aim to be accomplished by the Legislature," appear directed to locking in a set salary or seniority credits in that reinstatement and, accordingly, does not state such terms or conditions. *Surrey* v. *Lumbermens Mut. Cas. Co.*, 384 Mass. 171, 177 (1981).

It may be said that, in what is an indirect, but nonetheless telling, acknowledgment that the plain meaning the plaintiffs seek to discern is not actually present in the words of G. L. c. 32, § 8(2), the plaintiffs alternatively propose that § 8(2) "implicitly," or in its "spirit," entitles them to the higher compensation and seniority levels they seek. By definition, something implicit is not present in the language of a statute. "[T]he primary source of insight into the intent of the Legislature is the language of the statute." *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 853 (1983). Thus, this implicit or spirit of the law theory of statutory construction would have this court "add words to a statute that the Legislature did not put there, either by inadvertent omission or by design." *Commonwealth* v. *McLeod*, 437 Mass. 286, 294 (2002). Accord *Commonwealth* v. *Callahan*, 440 Mass. 436, 443 (2003). This we cannot do. Where "the language of the statute is clear, it is the function of the judiciary to apply it, not amend it." *Commissioner of Rev.* v. *Cargill, Inc.*, 429 Mass. 79, 82 (1999). For this court to read § 8(2)(*a*) as incorporating the terms of employment the plaintiffs propose would be judicial amendment of the statute.

Indeed, that the Legislature knew how to include language and words in a statute encompassing matters of salary, pay scale, and seniority when the Legislature intended these matters to be included is evident in other employment-related statutes, in which the Legislature has specifically and expressly stated that salary and seniority cannot be affected by a leave of absence. See, e.g., G. L. c. 149, § 105D; G. L. c. 149, § 52A.[9] Accordingly, the omission in G. L. c. 32, § 8, of terms concerning salary and seniority may be deemed to be one of deliberate Legislature design. "So important a matter would hardly have been passed over in silence." *Opinion of the Justices*, 308 Mass. 601, 613 (1941). If the Legislature had intended to impose such a profound set of requirements upon public employers, "it could have said so simply and unambiguously." *Commonwealth* v. *Ray*, 435 Mass. 249, 257 n.15 (2001).[10]

Finally, to support their reading of G. L. c. 32, § 8(2), the plaintiffs ask that we look at the legislative history and statutory development of this subsection. We need not do so. "When the use of the ordinary meaning of a term yields a workable result,

[9]General Laws c. 149, § 105D, as inserted by St. 1972, c. 790, § 1, which governs return to work following maternity leave, provides that upon return, a woman "shall be restored to her previous, or a similar, position with the *same status, pay, length of service credit and seniority* . . ." (emphasis added). Similarly, G. L. c. 149, § 52A, as inserted by St. 1956, c. 385, which governs return to work by military reservists on leave for military training, provides that such individuals shall "be restored to [their] previous, or a similar, position with the *same status, pay and seniority* . . ." (emphasis added).

[10]The plaintiffs cite *Carlson* v. *New Hampshire Dept. of Safety*, 609 F.2d 1024 (1st. Cir. 1979), cert. denied, 446 U.S. 913 (1980), to support the argument that G. L. c. 32, § 8(2), includes the "privileges and incidents of a position." However, that case, which considered a quite different Federal statute, is not only inapposite, but rather serves to support the opposite conclusion, i.e., that the omission in § 8(a)(2)(*a*) and (*b*) is just that — a deliberate legislative determination. The Federal statute at issue in *Carlson* (the Veterans Readjustment Assistance Act, 38 U.S.C. § 2021[b][3] [1974]) provided that a reservist "shall not be denied retention in employment or any promotion or *other incident or advantage of employment* because of any obligation as a member of a Reserve component of the Armed Forces" (emphasis added). See *Carlson, supra* at 1026. Unlike the Federal statute at issue in *Carlson*, the subject State law, G. L. c. 32, § 8(2)(*a*)-(*b*), does not include any reference to other "incident(s) or advantage(s) of employment." Indeed, the statute in *Carlson* is closer to the provisions of G. L. c. 149, § 52A, which has similar terms for public employee on leave for military training. See note 9, *supra*, and accompanying text.

there is no need to resort to extrinsic aids such as legislative history." *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 704 (1984). Accord *Leary* v. *Contributory Retirement Appeal Bd.*, 421 Mass. 344, 345-346 (1995).

Seniority and compensation are matters properly dealt with in the CBA, and the plaintiffs' rights under the CBA have already been determined in binding arbitration.[11] This is in accord with "the Commonwealth's strong public policy favoring collective bargaining between the public employers and employees over the conditions and terms of employment." *School Comm. of Pittsfield* v. *United Educators of Pittsfield*, 438 Mass. 753, 761-762 (2003).

b. *Pension retirement compensation under G. L. c. 32, § 26.* Posing a second theory of construction, the plaintiffs argue that the language referring to creditable years of service in G. L. c. 32, § 8(2)(*b*), is to be read as interconnected to G. L. c. 32, § 26, which governs the ultimate calculation of pension compensation upon retirement from public employment. The plaintiffs argue that construed together, the two laws must mean that the plaintiffs should have been reinstated at a higher rate of pay and with greater seniority credits because otherwise, the plaintiffs' pension retirement payments under § 26 potentially might be less than had no disability occurred. We reject the plaintiffs' strained reading of the two laws.

The plaintiffs' theory of interconnectivity does not flow because it relies on broken sentence fragments read in isolation, rather than in the appropriate foundational context. The words

---

[11]The plaintiffs also cite G. L. c. 150E, § 7(*d*), which, in the context of public employment, prohibits negotiations of terms in a CBA that are in conflict with State laws, excepting only the statutes enumerated in § 7(*d*). General Laws c. 32, § 8, is not one of the enumerated statutes in § 7(*d*) of G. L. c. 150E, and hence, the plaintiffs argue, the State police CBA cannot override this State law. This argument is off the mark. There is no conflict between the CBA and G. L. c. 32, § 8(2)(*a*) and (*b*) — indeed, there theoretically could be such a conflict only if § 8(2) granted the salary and seniority rights which the plaintiffs would ascribe to it, a construction we reject. See generally *Local 1652, Intl. Assn. of Firefighters* v. *Framingham*, 442 Mass. 463, 476 (2004), quoting from *Town of Danvers*, 3 M.L.C. 1559, 1572 (1977) ("[§] 7 by its very language poses a dual test . . . a matter must be . . . within the scope of [§]6 [and] it must be determined whether there is a conflict between that matter and the enumeration of [§] 7").

cited by the plaintiffs in G. L. c. 32, § 8(2)(b) — that, upon returning to work following disability leave, the reinstated employee "shall be entitled to a normal yearly amount of retirement allowance computed as though such disability retirement and reinstatement had not taken place" — address the number of years of "creditable service" to be deemed as belonging to the employee upon the date of reinstatement, and ensure that such employee does not lose count for any yearly amount of retirement allowance for prior creditable public service.[12,13] The preservation of the full count for these prior years is not directed at either salary or seniority in the future working years commencing with reinstatement. Nor is the "temporally related" preservation of a full count of the prior years of creditable service directed at the numerics of the computation of ultimate pension compensation, which is predicated entirely on the average salary earned during a twelve month period preceding retirement.[14] In sum, neither § 8(2)(b) nor § 26 says anything about salary following reinstatement during working years in

[12]In effect, G. L. c. 32, § 8(2)(b), preserves for the reinstated employee full credit, first, for the years that the employee worked prior to the disability retirement leave and, second, for the years between the initial retirement and the return to duty. The first of these purposes is achieved by the opening provision in § 8(2)(b), which provides that "[a]ny creditable service in effect for [a returning employee] at the time of his retirement for disability shall thereupon be restored to full force and effect." The second purpose is achieved by the concluding segment of § 8(2)(b), and preserves the right of the returning employee to creditable service "as though such disability retirement and reinstatement had not taken place."

[13]The Legislature's purpose in G. L. c. 32, § 8(2)(b), in protecting creditable years of service fits in logically with the potential effects that may flow from the aggregation of such credited years of service on other benefits provided by G. L. c. 32, which are based upon and accrue only after a minimum number of years of creditable service. See, e.g., G. L. c. 32, § 5(1)(m) (ten years of creditable service required to be eligible for superannuation retirement allowance); G. L. c. 32, § 10(2)(b) (certain rights to apply for termination retirement accrue only after six or more years of creditable service).

[14]General Laws c. 32, § 26(b)(ii), provides, in pertinent part:

"[Yearly payments shall be] equal to . . . seventy-two percent of the average annual rate of [a retiring employee's] regular compensation for the twelve month period for which he last received regular compensation immediately preceding the date his retirement allowance becomes effective . . . ."

public employment, or about conferring a specific award of seniority upon a reinstated employee for purposes of securing various on-the-job privileges — such as, in this case, for bidding on shifts and barracks assignments.

3. *Conclusion.* We answer the first reported question by holding that, in this case, the plaintiffs' salaries and seniority rights were governed by the CBA, and their rights concerning these terms of employment pursuant to that CBA were to be, and have been, determined in binding arbitration. We need not answer the remaining reported questions. The case is remanded to the Superior Court, where judgment shall enter for the defendant.

*So ordered.*