ALFRED W. WASSON *vs.* SILVIA M. WASSON.

No. 11-P-21.

Essex. December 6, 2011. - April 11, 2012.

Present: KATZMANN, SMITH, & GRAINGER, JJ.

*Divorce and Separation,* Child support, Modification of judgment, Attorney's fees. *Parent and Child,* Child support.

A Probate and Family Court Judge abused her discretion in modifying a father's child support obligations under a divorce judgment by excluding his capital gains from the calculation of his income, where, given that the modification involved a deviation from the child support guidelines, the judge failed to explain the deviation in specific written findings. [576-580]

On appeal from a Probate and Family Court judgment modifying a father's child support obligations under a divorce judgment, this court declined to consider an issue that had been waived. [580]

In an action brought in Probate and Family Court for modification of a father's child support obligations under a divorce judgment, the judge's attribution of income to the mother was not clearly erroneous or inconsistent with governing legal standards [580-581]; further, the judge's equalization of the attributed incomes of the father and the mother was not clearly errone-ous, given that there was no showing of a change in the father's earning potential [581-582]; finally, the judge did not abuse her discretion in awarding attorney's fees and costs to the father [582].

This court concluded that an award of attorney's fees was not appropriate to either party on an appeal from a Probate and Family Court judgment modifying a divorce judgment. [582]

COMPLAINT for divorce filed in the Essex Division of the Probate and Family Court Department on January 7, 2002.

Complaints for modification, filed on November 17, 2008, and May 19, 2009, were heard by *Dorothy M. Gibson,* J., and posttrial motions also were heard by her.

*William Sanford Durland, III,* for Silvia M. Wasson.

*Sheara F. Friend* for Alfred W. Wasson.

KATZMANN, J. This case arises from a Probate and Family Court judgment on a complaint for modification, as amended by

an order allowing a motion to amend judgment (which also is on appeal). The principal issue centers on the judge's apparent exclusion of capital gains income in determining child support under the governing statute and the Massachusetts Child Support Guidelines (guidelines), and whether the child support order, which deviated from the guidelines, was an abuse of discretion.

*Background.* Defendant Silvia M. Wasson and plaintiff Alfred W. Wasson were divorced in 2004. The divorce judgment provided, among other things, that the plaintiff would maintain health insurance for the defendant and the minor child. In 2005, the parties filed cross claims for modification. In 2008, both claims were dismissed or otherwise resolved, with the only genuine issue being whether the parties would be paid their attorney's fees. The divorce judge decided not, generally concluding that the claims by each, while ultimately not meritorious, were not frivolous. A panel of this court affirmed. *Monteleone-Wasson* v. *Wasson*, 74 Mass. App. Ct. 1117 (2009).

Soon after the 2008 modification judgment issued, and while it was on appeal, the parties again filed cross claims for modification. The plaintiff, contending that adding the defendant to his insurance was becoming prohibitively expensive, and noting that she could obtain health insurance through her employer, Tufts University (Tufts), at greatly reduced cost, wanted the defendant to get insurance through Tufts. (He still would reimburse her for that insurance.) Although the Tufts coverage apparently was better than that provided by the plaintiff, the defendant resisted. For her part, the defendant wanted the plaintiff's child support obligation modified to be in better accord with the guidelines as she interpreted them.

On the morning of the first day of trial on the cross complaints for modification, the defendant conceded that the plan through Tufts was a "good" plan, withdrew her objection, and indicated her willingness to voluntarily sign up for insurance through Tufts. As such, the 2009 modification judgment ordered the defendant to seek health insurance through Tufts, for which the plaintiff would continue to pay; increased the plaintiff's weekly child support payments; and denied requests for attorney's fees by both parties. The decision noted, however, that the award of

some, but not all, attorney's fees to the plaintiff might have some merit due to "stalling" by the defendant, but that the plaintiff's attorneys' affidavits had redacted too much information to make this possible.

The plaintiff then filed a motion to amend judgment, seeking to have his attributable income reduced to match the defendant's, requesting a change to exclude his capital gains from his over-all investment income, and seeking attorney's fees from the defendant. In an order dated April 18, 2010, the 2009 modification judge granted all of the plaintiff's requests for relief and awarded him $21,855 in attorney's fees instead of the $39,097.50 that he requested. The defendant filed the current appeal.

*Discussion.* 1. *Recalculation of plaintiff's child support obligation.* The defendant claims that the 2009 modification judge erred as a matter of law by excluding the plaintiff's regular use of assets from the calculation of his income. Specifically, the defendant argues that the judge should have counted as income capital gains from the liquidation of certain investments. The plaintiff contends that the evidence presented showed that these gains were actually principal withdrawals, not income.

When assessing a decision regarding a modification of child support, an appellate court "review[s] for an abuse of discretion." *Richards* v. *Mason*, 54 Mass. App. Ct. 568, 572 (2002), quoting from *Crowe* v. *Fong*, 45 Mass. App. Ct. 673, 677 (1998). "In assessing whether a judge has abused his discretion, [an appellate court does] not simply substitute [its] judgment for that of the judge, rather, [it asks] whether the decision in question rest[s] on whimsy, caprice, or arbitrary or idiosyncratic notions." *Chan* v. *Chen*, 70 Mass. App. Ct. 79, 84 (2007), quoting from *Massachusetts Assn. of Minority Law Enforcement Officers* v. *Abban*, 434 Mass. 256, 266 (2001).

"By statute, Massachusetts fixes child support guidelines." *Adams* v. *Adams*, 459 Mass. 361, 393 (2011). " '[C]hild support is controlled by G. L. c. 208, § 28, and the Massachusetts Child Support Guidelines.' . . . Except as otherwise stated therein, the guidelines have presumptive application to actions to modify existing orders." *Croak* v. *Bergeron*, 67 Mass. App. Ct. 750, 754 (2006). General Laws c. 208, § 28, as appearing in St. 1998,

c. 64, § 194, provides: "[i]n determining the amount of the child support obligation or in approving the agreement of the parties, the court *shall apply* the child support guidelines promulgated by the chief justice for administration and management, and there shall be a *rebuttable presumption* that the amount of the order which would result from the application of the guidelines is the appropriate amount of child support to be ordered" (emphasis supplied). General Laws c. 208, § 28, also states that if a party should rebut this presumption and show that deviation from the guidelines is warranted, "the court *shall make specific written findings* indicating the amount of the order that would result from application of the guidelines; that the guidelines amount would be unjust or inappropriate under the circumstances; the specific facts of the case which justify departure from the guidelines; and that such departure is consistent with the best interests of the child" (emphasis supplied).

The preamble of the guidelines states, "There shall be a rebuttable presumption that these guidelines apply in all cases establishing or modifying a child support order." Furthermore, tracking the statute, § IV of the guidelines requires that the judge make specific written findings when deviating from the guidelines, including findings "that such departure is consistent with the best interests of the child." Section IV of the guidelines then sets forth examples of "[c]ircumstances which may support deviation[,] includ[ing] . . . [that] absent deviation, application of the guidelines would lead to an order that is unjust, inappropriate or not in the best interests of the child, considering the Principles of these guidelines."

Of relevance here, § I of the guidelines addresses the definition of income, and how it should be calculated when determining a child support obligation: "For purposes of these guidelines, income is defined as *gross income from whatever source* regardless of whether that income is recognized by the Internal Revenue Code or reported to the Internal Revenue Service or state Department of Revenue or other taxing authority. Those sources include, but are not limited to, the following: . . . capital gains in real and personal property transactions to the extent that they represent a regular source of income." Therefore, to the extent that capital gains represent a regular source of income, there is a rebuttable

presumption that they should be included when calculating income for a child support obligation. Cf. *Noonan* v. *Noonan*, 261 Neb. 552, 563 (2001) (interpreting its own, similar guidelines, Supreme Court of Nebraska ruled that "the father has not rebutted the presumption of including the capital gains income in the child support calculation").

In the present case, there is evidence on the record that the plaintiff's use of capital gains constituted a regular source of income. More specifically, in 2006, the plaintiff had capital gains of $41,863; in 2007 he had capital gains of $25,204; and in 2008 he had capital gains of $141,575.

The divorce judge appears to have followed the guidelines and counted the plaintiff's capital gains as income for purposes of calculating his child support obligation, setting the amount that he could generate from investments at $60,000 per year. Three years later, the 2009 modification judge initially followed this formula, leaving the plaintiff's obligation undisturbed. In her decision, the judge noted that the plaintiff's unearned income should include attributed interest, dividend income, and income derived from capital gains due to a lack of evidence by which to distinguish these amounts.

In the plaintiff's motion to amend, he contended that capital gains should be excluded from the calculation of his income, and that the amount of his child support should thereby be reduced from $361 per week to $261 per week. He stated:

> "Plaintiff's testimony, as well as the tax returns, also demonstrate that his reported income from capital gains resulted from his sale of stocks, which, as Plaintiff testified, was necessary solely in order to generate sufficient income to pay his support obligation. In fact, in 2007 Plaintiff's entire income, excluding capital gains, was $47,366, or about *half* the amount on which the child support obligation was based; and in 2008 this income was reduced further to $43,075. Plaintiff had no choice but to generate more income in order to pay his support. *Such capital gains thus do not represent a true gain from which his support obligation should be calculated. This would create a self-perpetuating process by which Plaintiff would be continuously required to create more capital gain income*

*solely to pay the increased support obligation that resulted solely from his increased capital gain income. This results in a 'double dip' that was clearly not contemplated by the Child Support Guidelines"* (second emphasis supplied).

In a margin endorsement, the 2009 modification judge stated, "The within motion is ALLOWED and the judgment shall be amended accordingly." It is possible that the judge was persuaded that the plaintiff's "double dipping" theory had overcome the presumption that the use of his capital gains should be included in the income calculation. As noted, *supra,* while it is in the sound discretion of the judge to modify an existing child support order, when the modification involves a deviation from the guidelines, both the statute and the guidelines require that the judge explain the deviation in specific written findings. Here, however, there were no specific written findings. For this reason, the judge abused her discretion, and the child support modification cannot stand. See *Department of Rev.* v. *Foss,* 45 Mass. App. Ct. 452, 458-459 (1998).

As the judge must consider the "double dipping" theory as argued by the plaintiff on remand, we note that while "Massachusetts has looked with disfavor at so-called 'double dipping,' " *Adams* v. *Adams,* 459 Mass. at 394, what constitutes "double dipping" is not easily defined, and whether it is improper in a particular case must be carefully assessed. The basic law has been aptly summarized:

> " 'Commentators use the phrase "double dipping" to describe the seeming injustice that occurs when property is awarded to one spouse in an equitable distribution of marital assets and is then also considered as a source of income for purposes of imposing support obligations.' *Champion* v. *Champion,* 54 Mass. App. Ct. 215, 219 (2002). *Sampson* v. *Sampson,* 62 Mass. App. Ct. 366, 373-374 (2004). *Adlakha* v. *Adlakha,* 65 Mass. App. Ct. 860, 865 (2006). See *Dalessio* v. *Dalessio,* 409 Mass. 821, 828 (1991), *S.C.,* 413 Mass. 1007 (1992). Although '[c]ourts and commentators have often disagreed . . . as to what constitutes double-dipping,' *Sampson* v. *Sampson, supra* at 374, we have stated that there is nothing in the Supreme Judicial Court's *Dalessio* decision, *supra,* or in G. L. c. 208, § 34,

> . . . that prohibits double dipping as matter of law. See
> *Champion* v. *Champion, supra* at 222. Rather, . . . the
> judge must look to the equities of the situation to make
> her determination. See *ibid.*"

*Croak* v. *Bergeron,* 67 Mass. App. Ct. at 758-759.[1]

The objection lodged by the plaintiff, premised on a theory of unfair self-generating liability — that he was being compelled to generate capital gains income to satisfy the child support order (which in turn was the basis of increased income supporting in circular fashion a higher level of child support) — does not fall within the commonly expressed definition of "double dipping." That said, however the theory is characterized, the question remains whether the inclusion of capital gains as presumptively required by the guidelines results in an increasing support obligation that is unjust or inappropriate under the circumstances. On remand, if the judge determines that deviation from the guidelines is warranted and consistent with the best interests of the child, the judge must make specific written findings, as required by the governing statute and the guidelines.

2. *Other issues.* a. *Health insurance.* The defendant argues that the issue of purchasing health insurance through Tufts was precluded by the 2008 modification judgment, and that the 2009 modification judgment was barred due to the doctrine of res judicata. Yet on the first morning of trial, she conceded that the insurance plan provided through Tufts was a "good" plan, and that she did not object to enrolling in that plan, effectively resolving the question. The issue is thus waived for appeal.

b. *Attribution of income to defendant.* The defendant claims that the decision to attribute income to her was unsupported because the 2009 modification judge made no findings that any positions were available with the level of earnings attributed to her; the finding that the defendant could earn additional income was not supported by the record; and the plaintiff failed to present evidence of available employment. Usually, "a judge

---

[1]"[W]e decline to disturb an award of child support for inequitable 'double dipping' where it is possible to 'identify separate portions of a given asset of a divorcing spouse as the separate bases of the property assignment and any alimony or support obligations.' " *Adams* v. *Adams, supra,* quoting from *Dalessio* v. *Dalessio,* 409 Mass. 821, 828 (1991).

should determine by specific and detailed findings of fact whether an individual will be able to earn additional income with reasonable effort before attributing income" in calculating child support. *Flaherty* v. *Flaherty*, 40 Mass. App. Ct. 289, 291 (1996). However, a judge may attribute income when she determines that the "party fail[ed] to take another job despite its easy availability," or that the party owns "substantial assets." *Ibid.* The judge found that the defendant earns $16,000 per year, and attributed an additional $10,000 of income. At the time of the divorce, the defendant was working at three different universities in the Boston area, earning approximately $34,944 per year. There also was evidence at the second modification trial that she previously taught summer classes. The defendant entered no evidence that her earning capacity had been significantly reduced; thus, there are ample findings of fact on the record to support an attributable income of $26,000. The judge's determination was not clearly erroneous or inconsistent with governing legal standards. See *Yankee Microwave, Inc.* v. *Petricca Communications Sys., Inc.*, 53 Mass. App. Ct. 497, 504 (2002).

c. *Attribution of income to plaintiff.* The defendant claims that the 2009 modification judge should have attributed additional income to the plaintiff, stating that it was error for the judge to treat the parties differently and attribute income to the defendant arbitrarily, reduce the plaintiff's attributed employment income so that it matched the defendant's, and then ignore unchanged circumstances, both of which would point to higher levels of income for the plaintiff.

The divorce judge attributed income to the plaintiff equal to that of the defendant because they both had "somewhat similar educational attainments" and therefore the judge assumed that their earning potentials were approximately the same. Having no record of the earning potential of the plaintiff, this formula was established and followed in an attempt to equalize the parties' earned incomes.

The 2009 modification judge lowered the defendant's income to $26,000, while not adjusting the plaintiff's income to match hers, which was not consistent with the formula established in the divorce judgment. Upon realizing this apparent mistake, the judge granted the plaintiff's motion to amend and modified the

judgment to equalize his income with the defendant's income. Because there has been no showing of a change in the plaintiff's earning potential, the judge's finding was not clearly erroneous.

d. *Award of attorney's fees and costs.* The defendant argues that the attorney's fees and costs awarded to the plaintiff were inappropriate and excessive because her claims were not frivolous and the plaintiff was equally responsible for the litigation. These contentions are not persuasive. A judge has discretion to award fees even in the absence of bad faith or frivolous claims or defenses. See G. L. c. 208, § 38; *Cooper* v. *Cooper*, 62 Mass. App. Ct. 130, 141-142 (2004). In the present case, the judge determined that the defendant, at least with respect to the health insurance issue, simply was being litigious for the sake of being litigious. After the plaintiff's counsel presented an appropriately detailed fee request, the judge decided that the equities lay on the plaintiff's side and awarded him about half of the amount claimed. There was no abuse of discretion. See *Cooper* v. *Cooper, supra* at 141.

The defendant also argues that she was entitled to an evidentiary hearing before attorney's fees were awarded to the plaintiff. We disagree. See *Edinburg* v. *Edinburg*, 22 Mass. App. Ct. 192, 198 (1986).

e. *Appellate attorney's fees.* The parties seek attorney's fees for this appeal, with each claiming that the other's appeal or arguments are frivolous and without merit. "An appeal is frivolous '[w]hen the law is well settled, when there can be no reasonable expectation of a reversal.' " *Avery* v. *Steele*, 414 Mass. 450, 455 (1993), quoting from *Allen* v. *Batchelder*, 17 Mass. App. Ct. 453, 458 (1984). Determination of whether an appeal is frivolous, thereby warranting an award of reasonable costs, is left to the sound discretion of the appellate court. See *Masterpiece Kitchen & Bath, Inc.* v. *Gordon*, 425 Mass. 325, 329-330 (1997). While the defendant's concession on the issue of health insurance suggests the frivolity of the appeal on that issue, her claims regarding the child support order pose a serious question. Moreover, the plaintiff's arguments on these issues also were not frivolous. Accordingly, an award of appellate attorney's fees is not appropriate to either party.

*Conclusion.* So much of the 2009 modification judgment, and

so much of the order allowing the plaintiff's motion to amend, that modified the child support order are vacated, and the case is remanded for findings and disposition consistent with this opinion. In all other respects, the 2009 modification judgment and the order allowing the plaintiff's motion to amend are affirmed.

*So ordered.*