**Kenneth H. WALTERMYER, Appellant,**

v.

**ALUMINUM COMPANY OF AMERICA, Appellee.**

No. 86–3156.

United States Court of Appeals, Third Circuit.

Argued Sept. 30, 1986.

Decided Nov. 7, 1986.

Rehearing and Rehearing En Banc Denied Dec. 1, 1986.

Mary T. Koehmstedt (argued), John F. Cordes, Attys., Appellate Staff, Richard K. Willard, Asst. Atty. Gen., Civ. Div., Dept. of Justice, Washington, D.C., J. Alan Johnson, U.S. Atty., Pittsburgh, Pa., for appellant; George Salem, Sol., John Depenbrock, Associate Sol., William H. Berger, Department of Labor, Washington, D.C., of counsel.

Ralph W. Waechter (argued), Aluminum Company of America, Pittsburgh, Pa., for appellee.

Before WEIS, MANSMANN and HUNTER, Circuit Judges.

**OPINION OF THE COURT**

WEIS, Circuit Judge.

The question in this case is whether a National Guardsman is entitled to pay from his employer for a holiday that occurs during his leave of absence for the annual

two-week military training period. The collective bargaining agreement limited eligibility for holiday pay to individuals who worked during that week, but exempted from that requirement persons in a number of categories who were absent for reasons beyond their control. Because of the similarity between military leave of absence and those exempted classifications, we conclude that the Vietnam Era Veterans' Readjustment Assistance Act, 38 U.S.C. §§ 2001, *et seq.*, requires that the guardsman be treated the same as those in the exempted classifications who receive holiday pay. Accordingly, we will reverse the district court's judgment in favor of the employer.

After the district court entered summary judgment for defendant employer and denied the plaintiff's motion, plaintiff appealed. The facts are not in dispute. Plaintiff has been an employee of defendant since 1966. He is also a member of the Pennsylvania Air National Guard, and during its annual two-week training period defendant has granted leaves of absence as required by 38 U.S.C. § 2024(d).

In 1982, the two-week training period began on July 3, and included the Independence Day holiday. In 1984, the Memorial Day holiday occurred during the training period that began on May 19. Relying on his union's collective bargaining agreement, which designated the two days as paid holidays, plaintiff contended that he was entitled to two days' wages. Defendant refused on the ground that plaintiff had not met the prerequisite to holiday pay set out in the collective bargaining agreement.

ALCOA's agreement with the plaintiff's union provides that full-time employees receive pay for designated holidays if, during the payroll week (Monday through Sunday) in which the holiday occurs, the employee is:

1. At work; or
2. On a scheduled vacation; or
3. On a layoff under specified conditions; or
4. Performing jury service; or
5. A witness in a court of law; or
6. Qualified for bereavement pay; or
7. Absent because of personal illness and certain sick leave conditions apply.

Plaintiff maintained that because he was on active military duty during the holiday weeks he qualified for holiday pay, as did employees in the exempted categories, *e.g.*, jurors or witnesses in court. He asserted that the holiday pay is "an incident or advantage of employment" under the the Vietnam Era Veterans Readjustment Assistance Act, 38 U.S.C. §§ 2021, *et seq.*, and may not be withheld from those on leaves of absence to participate in military training.

The district court, relying on *Monroe v. Standard Oil Co.*, 452 U.S. 549, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981), concluded that plaintiff could not recover because he sought greater rights than those available to fellow-employees. Although several groups of ALCOA employees received holiday pay despite their absence during the critical weeks, the court observed that plaintiff did not fit within the distinct categories exempted by the collective bargaining agreement. In these circumstances, to require holiday pay for the plaintiff "would enlarge the obligation of the employer beyond the simple statutory command. We find that plaintiff has not suffered any discrimination by being denied any benefit to which other employees are entitled." *Waltermyer v. Aluminum Company of America*, 633 F.Supp. 6, 8 (W.D.Pa.1986). The court, therefore, entered judgment for the employer.

## I

On appeal, plaintiff asserts that since some employees receive more favorable treatment than others, the statute requires that he be placed on equal footing with those workers in the privileged group. Alcoa argues that its treatment of plaintiff was consistent with that of all other employees on leaves of absence.

The statutory provisions relevant here had their origins in World War II, and originally were designed to provide reemployment for veterans on their return to civilian life. Pub.L. No. 54–783, § 8, 54 Stat. 885, 890 (1940). Various amendments were enacted over the years, and in 1960, National Guardsmen, in addition to reservists, became protected from employment discrimination because of absences from work during short-term military training exercises. 38 U.S.C. 2024(c).

Section 2024(d) provides that employees "shall upon request be granted a leave of absence" by their employers for the period of active duty required for training. Once released from active duty, the employees "shall be permitted to return" to their positions "with such seniority, status, pay, and vacation" as the employees would have enjoyed had they not taken leave for military training.[1]

The Department of Labor concluded that § 2024(d) inadequately responded to the special problems reservists had encountered and, therefore, proposed legislation that Congress adopted in 1968. Codified at 38 U.S.C. § 2021(b)(3), the amendment provides that a person shall not be "denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces."[2]

The Supreme Court first construed § 2021(b)(3) in *Monroe v. Standard Oil.* In earlier cases the Court had reviewed provisions of the Act which applied to veterans with more lengthy service who then returned to civilian life. *See, e.g., Ala-bama Power Co. v. Davis,* 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977) (worker entitled to pension credit for 30–month break in employment spent in military).

In reviewing the legislative history of § 2021(b)(3), the *Monroe* Court observed that the Senate and House Reports agreed on the aim of the statute: to insure reservists "the same treatment afforded their coworkers not having such military obligations." 452 U.S. at 558, 101 S.Ct. at 2515. The thrust of the legislation, according to the Court, was to prevent discrimination against reservists but not to grant them preferential treatment. Following that theme, the Court found nothing in the legislative history to indicate the statute was designed to give reservists on leave all the incidents of employment accorded working employees, including regular and overtime pay.

Monroe had contended that the statute obligated his employer to reschedule his hours of work so that time lost as a result of weekend National Guard duty could be made up on other days of the week. The Court rejected his argument because it "would require work-assignment preferences not available to any nonreservist employee at the respondent's refinery." 452 U.S. at 561, 101 S.Ct. at 2517.

Before *Monroe* reached the Supreme Court, courts of appeals had applied the statute in several cases. In *Carlson v. New Hampshire Dept. of Safety,* 609 F.2d 1024 (1st Cir.1979), the court held that a state trooper's reassignment to a less desirable shift because of his six-week absences for military training violated § 2021(b)(3).

---

1. Section 2024(d) speaks to members of the reserve forces not covered by subsection (c), which in turn applies to those ordered to periods of service longer than twelve consecutive weeks. Section 2024(f) says that a National Guard member's full-time training constitutes active duty for purposes of subsection (d). In this context, therefore, section 2024(d) is applicable to members of the National Guard called to full-time training for less than three consecutive months.

   Subsection (c) provides more extensive protection for reservists or guardsmen called for longer than twelve consecutive weeks; read as a whole, therefore, the statute suggests a distinction in benefits for Guardsmen called for the usual two-week training periods and those called for more than twelve weeks. The situation is far from clear and it must be noted that section 2021(b)(3) (pertaining to reservists' reemployment rights after training) does not differentiate between short and long terms of service.

2. This provision applies to both reservists and National Guardsmen. *Monroe v. Standard Oil,* 452 U.S. at 552 n. 2, 101 S.Ct. at 2512 n. 2.

In determining whether the plaintiff was a victim of discrimination, the court of appeals did not compare him to those co-workers away on nonmilitary leave of absence but concluded the standard should be based on the more inclusive class of "co-workers not having [reserve] obligations." 609 F.2d at 1027.

The court in *West v. Safeway Stores, Inc.*, 609 F.2d 147 (5th Cir.1980), adopted a standard that would require an employer "in applying the collective bargaining agreement to treat reservists as if they were constructively present during their reserve duty in similar contexts." *Id.* at 150. The dispute in that case centered on the employer's agreement with the union to provide forty hours of work per week. To the extent that the factual situations are similar, *Monroe* may have substantially weakened *West.*

*Carney v. Cummins Engine Co.*, 602 F.2d 763 (7th Cir.1979), required an employer to grant reservists opportunities for overtime work equivalent to those available to other employees. The court refused to enforce a provision of the collective bargaining agreement less favorable to reservists than other employees.

The facts of *Kidder v. Eastern Air Lines*, 469 F.Supp. 1060 (S.D.Fla.1978), resemble those presented here. The *Kidder* collective bargaining agreement denied holiday pay to employees on leave during a holiday. Because the required two-week training program forced the plaintiff to be absent, the employer disallowed holiday pay. The district court held that an employer must treat a National Guardsman as if he had remained at work and must not deprive him of benefits that accrued during that time if due by virtue of mere presence there.

Whether *Kidder*'s broad holding remains valid in light of *Monroe*'s more restrictive interpretation of the Act is questionable. Interestingly, however, in *Eagar v. Magma Copper Company*, 389 U.S. 323, 88 S.Ct. 503, 19 L.Ed.2d 557 (1967), the Supreme Court reversed per curiam a court of appeals judgment denying holiday pay to veterans who had returned to employment after two years of military service. The collective bargaining agreement conditioned holiday pay on the employees having been on the payroll continuously for three months before the holiday. The employer contended the veteran was not eligible because he returned to work less than three months before the holiday. Although the court's order did not explain the reversal, and the case involved veterans rather than reservists, the fact situation itself is significant.

*Eagar* should be compared with *Foster v. Dravo Corp.*, 420 U.S. 92, 95 S.Ct. 879, 43 L.Ed.2d 44 (1975), also a returning veteran case, in which the Court held that an employee earns vacation time as a result of days worked, rather than merely gaining it as a benefit of seniority. Consequently, the veteran's claim for vacation rights accruing during his eighteen months of military service failed. However, in *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 100 S.Ct. 2100, 65 L.Ed.2d 53 (1980), a veteran was found entitled to supplemental unemployment benefits based partially on time spent in military service. In that instance, the benefit was considered an incident of seniority because the collective bargaining agreement provided credit for "weeks in which the employee is paid for any hours not worked, as for jury duty." *Id.* at 202, 100 S.Ct. at 2107.

## II

In addressing the circumstances of this case, we begin by recognizing that plaintiff is not entitled to preferential treatment. As the Senate report observed, § 2021 was designed "to prevent reservists and National Guardsmen not on active duty who must attend week end drills or summer training from being discriminated against because of their Reserve membership." S.Rep. No. 1477, 90th Cong., 2d Sess. 102 (1968). *See also* 38 U.S.C. 2021 note.

Although the statute establishes equality as the test, we must look to the collective bargaining agreement to determine the rights of ALCOA employees to various

benefits. Generally, Alcoa employees do not receive the extra wages unless they have worked every day in the week that the holiday falls. The reason for including this limitation in the collective bargaining agreement is obvious—to protect the employer from excessive absenteeism during a holiday week. Some employees find irresistable the temptation to make it a "long weekend" or stretch the holiday by taking a day or two before or after, even if required to take leave without pay. Employers have found ample basis for restrictions to prevent production disruption during holiday weeks.

However, the collective bargaining agreement does reflect employee equities as well; workers whose absence during the holiday week is involuntary and through no fault of their own receive holiday pay. Thus, employees on jury duty or testifying in court are exempt from the work requirement. In those instances the government compels the employees' attendance and the worker, presumably, does not choose when to comply with this obligation. In addition, the employee does not attempt to enlarge the holiday; this time off would take place no matter when the holiday occurred. Finally, the absence caused by the exempted categories would not generally be of extended duration. In these particular instances the employees also receive their regular pay.

The collective bargaining agreement further exempts employees who are absent without pay because of defined illness or layoff. Again, the common thread is the lack of choice by the employees.

Each of these characteristics holds true when the leave of absence is for military training. Particularly important is the fact that the guardsmen have no individual voice in selecting the weeks they will be on active duty. Military superiors set the time for training which is both compulsory and short. Although not listed in the collective bargaining agreement, military

leave shares the essential features of those exemptions designated for employees not in the reserve.[3] Thus, we hold that plaintiff must receive pay for those holidays occurring while he is on active duty.

As noted earlier, we are conscious that the plaintiff's rights must equal, and not exceed those of employees covered by the collective bargaining agreement. However, as the Court stated in *Accardi v. Pennsylvania R.R. Co.*, 383 U.S. 225, 229, 86 S.Ct. 768, 771, 15 L.Ed.2d 717 (1966): "employers and unions are [not] empowered by the use of transparent labels and definitions to deprive a veteran [or reservist] of substantial rights guaranteed by the Act."

Viewed in this light, relieving those on military leave from the work requirement merely establishes equality for National Guardsmen and reservists, not preferential treatment. Analysis of the reason for the collective bargaining agreement exemptions and their prerequisites demonstrates that the group to which they apply provides the appropriate standard against which the guardsman's claims are to be measured, rather than the larger group of all employees on leaves of absence.

It is important, too, that work during a holiday week be seen only as establishing eligibility for holiday pay, not compensation for the other days not worked. In this respect, the guardsman here seeks less than employees called for jury duty who are entitled to their regular wages in addition to juror fees. We do not confine the group establishing the appropriate standard of comparison here to those who receive their regular wages while away from work. We include those who do not, but are nevertheless entitled to holiday pay under the terms of the collective bargaining agreement. We limit our holding to the claim to holiday pay presented here.

We conclude, therefore, that plaintiff has established his right to holiday pay under the provisions of the Act; accordingly, the

---

3. We realize a planned vacation is different from the other exceptions on the list. Vacation is earned time away from work, and this exception merely recognizes that an employee should not be prejudiced, in the form of lost holiday pay, for taking an earned vacation.

judgment will be reversed and the case will be remanded to the district court for entry of a judgment in favor of plaintiff.

JAMES HUNTER, III, Circuit Judge, dissenting:

I join my colleagues in their enthusiastic support of our Reserves and National Guard. I cannot, however, join them in their interpretation of § 2021(b)(3) or in their treatment of the Supreme Court's decision in *Monroe v. Standard Oil Co.*, 452 U.S. 549, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981). Accordingly, I dissent.

## I.

*Monroe* makes it clear that § 2021(b)(3) is addressed only to those benefits or incidents of employment which affect an employee's long-term status as an employee or which an employee accrues over the long-term. Section 2021(b)(3) simply does not apply to benefits, such as holiday pay, which constitute isolated specific purpose compensation. Indeed, the main point of contention between the dissent and the majority in *Monroe* was whether § 2021(b)(3) has the broad coverage which my colleagues argue for or whether § 2021(b)(3) only covers long-term concerns such as opportunities for promotions and raises, protection from demotion or discharge, etc. *See Monroe*, 452 U.S. at 567, 101 S.Ct. at 2520 (dissenting opinion). The majority concluded that the latter states the correct rule. After a thorough review of the legislative history, the Court decided "that § 2021(b)(3) was enacted for the significant but limited purpose of protecting the employee-reservist against discriminations like discharge and demotion, motivated solely by reserve status." *Id.* at 559, 101 S.Ct. at 2516 (majority opinion); and *see id.* at 562, 101 S.Ct. at 2518.

Today, the majority re-hoists the tattered banner of the *Monroe* dissenters. It is, of course, our duty to apply the law as interpreted by a majority of the Supreme Court. The Court has ruled that § 2021(b)(3) only applies to a limited category of employment benefits. Holiday pay is a specific form of compensation that one normally receives only in exchange for actual presence on the job during the week in which the holiday falls. Denial of holiday pay is not a "discrimination like discharge or demotion." It, therefore, does not come within § 2021(b)(3)'s ambit.

## II.

Part I of the majority opinion refers to four pre-*Monroe* lower court cases that interpreted § 2021(b)(3). The first of these cases, *Carlson v. New Hampshire Dept. of Safety*, 609 F.2d 1024 (1st Cir.1979), involved a state trooper who was permanently banished to a less desirable job assignment because of his reserve obligations. Because *Carlson* dealt with an incident of employment which affected the plaintiff's long-term status as an employee, it is distinguished from the present case and fully consistent with the *Monroe* opinion. In the other three cases relied upon by the majority, the courts based their opinions on the erroneous notion that § 2021(b)(3) requires employers to treat absent reservists as if they had remained at work. *See West v. Safeway Stores, Inc.*, 609 F.2d 147, 150 (5th Cir.1980); *Carney v. Cummins Engine Co.*, 602 F.2d 763, 767 n. 4 (7th Cir. 1979); *Kidder v. Eastern Air Lines*, 469 F.Supp. 1060, 1066 (S.D.Fla.1978). The Supreme Court has explicitly and emphatically rejected this notion. *See Monroe*, 452 U.S. at 563, 101 S.Ct. at 2518 ("And certainly there is nothing in the legislative history that would indicate Congress intended that reservists were to be entitled to all 'incidents and advantages of employment' accorded during their absence to working employees...."). Thus, the cases cited by the majority rather than supporting today's decision—instead, reveal the fact that today's decision ignores the teachings of *Monroe*.

The majority invokes three "returning veteran" cases. These cases are simply not apposite. The statutory provisions protecting returning veterans require an employer to treat a returning veteran as if he had been continuously in the employer's employment during his absence. 38 U.S.C.

§ 2021(b)(2)[1] (1982). Of course, if § 2021(b)(3)[2] contained a similar requirement, there would be no real dispute in this case, but as stated earlier § 2021(b)(3) does not require an employer to treat an absent reservist as if he were present. Thus, the returning veteran cases have no relevance here.

Next, the majority devises the "involuntary absence" concept, not a hint of which can be found in § 2021(b)(3) itself. Further, it is difficult indeed to see the concept in the collective bargaining agreement. As the majority points out, one class of employees who may be absent during the week in which a holiday occurs yet still receive holiday pay is the class of employees on vacation. Certainly, vacation leave is not involuntary. More importantly, the collective bargaining agreement fails to exempt from the requirement of having to work during the week of the holiday innumerable categories of employees who might be absent involuntarily. To name a few, the agreement does not exempt employees on sick leave for more than a week, most employees on a layoff, and employees who are drafted or otherwise fulfilling regular military obligations. Significantly, this last category of employees also has no statutory entitlement to holiday pay.[3]

Even if the concept of involuntariness can be found in the collective bargaining agreement, a reservist's absence is not involuntary in the same sense that the absences of employees listed in the agreement are involuntary. A juror for instance, is under legal compulsion to perform jury duty; no choice triggers the duty. So also no choice is involved when an employee is subpoenaed as a witness. A Reservist or Guardsman, however, makes a voluntary decision to join the Reserves or National Guard. At any rate, even if one were to concede that a juror and a reservist are on equal footing, one would not logically reach the conclusion that the majority reaches here. If a reservist and juror are equal, then the reservist is not entitled to just holiday pay but to full pay for all days not worked, since employees absent for jury duty receive full pay. Since it is, however, well settled that § 2021(b)(3) does not require an employer to pay the employee for the time he is absent fulfilling reserve obligations, *Monroe*, 452 U.S. at 563 n. 4, the juror analogy is flawed and ineffective.

In *Monroe*, the Supreme Court staked out a clear route for us to follow when deciding cases arising under § 2021(b)(3). I would follow that route and affirm.

---

**1.** 38 U.S.C. § 2021(b)(2) provides in pertinent part:

> ... any person who is restored to or employed in a position in accordance with the provisions ... of this section should be so restored or reemployed in such manner as to give such person such status in the person's employment *as the person would have enjoyed if such person had continued in such employment continuously from the time of such person's entering the Armed Forces until the time of such person's restoration to such employment,* or reemployment. (emphasis added)

**2.** 38 U.S.C. § 2021(b)(3) provides:

> Any person who holds a position described in clause (A) or (B) of subsection (a) of this section shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces.

**3.** We note that the majority finds it particularly significant that reservists' absences are short. I do not think that this is either important or supportable. As the Supreme Court recognized in *Monroe*, absences caused by reserve obligations can be two months or more. 452 U.S. at 563, 101 S.Ct. at 2518.