United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 2, 2004**

Charles R. Fulbruge III
Clerk

Revised December 20, 2004

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-50588
_____

ANTHONY ROGERS; RICHARD MORALES; VENTURA CALDERON, JR.; ANDREW L. ALMAZAN; ROBERT J. DELEON; ROLANDO CESAR GARZA; ROBERT A. GEARHART; ISIDRO MEDINA, JR.; TIMOTHY L. MENCHACA; EMILIO M. MONTES; BRUCE R. MOORE; NATHANIEL OAKMAN; ANTONIO RIVAS; JEFFERY J. ZAVALA; AND GEORGE W. RANDALL,

Plaintiffs-Appellees,

versus

CITY OF SAN ANTONIO, TEXAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

Before JONES, DENNIS, and PICKERING, Circuit Judges.

DENNIS, Circuit Judge:


Plaintiffs, fifteen employees of the San Antonio fire department, who are members of either the United States military reserves or the National Guard ("Uniformed Services"), brought this civil action under the Uniform Services Employment and Reemployment

Rights Act of 1994 ("USERRA")[1] against the City of San Antonio, Texas for declaratory, injunctive, and equitable relief; compensation for lost wages and benefits; and additional liquidated damages. The plaintiffs contend that the City violated USERRA by denying them employment benefits because of their absences from work while performing their military duties in the Uniformed Services. More specifically, the employees assert that the City's Collective Bargaining Agreement ("CBA") and policies regarding military leave of absence deprive them of straight and overtime pay, opportunities to earn extra vacation leave and vacation scheduling flexibility, and opportunities to secure unscheduled overtime work and job upgrades. Plaintiffs assert that under USERRA § 4311(a)[2] "the City, in implementing these employment practices, unlawfully discriminate[s] against them by deeming them 'absent' from work whenever they are on leave fulfilling their military reserve duties, as opposed to viewing them as 'constructively present at work.'"[3]

---

[1] 38 U.S.C. § 4301 *et seq.*

[2] Section 4311(a) of USERRA provides that:
A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform services in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

[3] *Rogers v. City of San Antonio, Texas,* 211 F. Supp. 2d 829, 831 (W.D. Texas 2002).

2

The City contends that, because § 4316(b)(1)[4] provides that persons absent from civilian employment by reason of military service are entitled only to such non-seniority rights and benefits as the employer provides to employees when they are on non-military leaves of absence, plaintiffs cannot recover since they were treated equally as to such rights with all employees absent on non-military leave.

**Facts**

Plaintiffs are employed by the City fire department in its Fire Suppression division and Emergency Medical Services division ("Firefighters"). The CBA between the City and the employees' Union governs the working conditions of all City firefighters. Plaintiffs, as members of the Uniformed Services("reservists"), typically must take leave of absence for military training a minimum of one weekend per month and one annual two week session. Reservists may volunteer or be ordered to take military leave to perform extra duties. In order to be promoted, reservists must meet

_____

[4] Section 4316(b)(1) of USERRA provides that:
[A] person who is absent from a position of employment by reason of service in the uniformed services shall be –
    (A) deemed to be on furlough or leave of absence while performing such service; and
    (B) entitled to such other rights and benefits not determined by senority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

3

the same educational requirements as a full-time active member of the Uniformed Services, such as officer training courses.

The parties agreed to bifurcate the liability and damages issues and filed cross-motions for partial summary judgment on the question of whether the City violated USERRA and is therefore liable to the plaintiffs. They also filed cross-motions on whether the plaintiffs' claims were barred or curtailed by a statute of limitations, laches or estoppel. The record consists principally of a joint stipulation of facts, the CBA, and a number of depositions.

The district court granted the employees' motion as to liability on substantially all claims and denied the City's cross-motion. The district court then referred the cross-motions regarding the statute of limitations, laches and estoppel to a magistrate judge. The magistrate judge granted plaintiffs' motion on these issues, holding that the employees were entitled to recover retrospective damages for the four-year period preceding the filing of their complaint. The district court determined that the summary judgments on the issues of liability and limitations on retrospective recovery "involve a controlling question of law to which there is a substantial ground for difference of opinion," and

certified the judgments for interlocutory appeal under 28 U.S.C. §
1292(b).[5]  The City appealed.

### Standards of Review

The threshold question of law is one of statutory construction,
viz., namely which provision of USERRA, § 4311(a) or § 4316(b)(1),
governs the adjudication of the employees' claims.  The employees
contend that the district court correctly applied only § 4311(a),
which prohibits private employers from denying employment benefits
to employees on the basis or their membership, service or
obligations related to the United States military forces.  The City
contends that the district court erred in basing its decision on §
4311(a) because this case is appropriately governed only by §
4316(b)(1), which regulates the civilian employment non-seniority
rights of persons who are required to be absent from jobs for
service in the military forces.  We review the decision of the
district court on this issue of law *de novo*.  *See Casas v. American
Airlines, Inc.*, 304 F.3d 517, 520 (5th Cir. 2002).

Once we have interpreted the statute and decided upon its
proper application, we address the parties' cross-motions *de novo*,
applying the same standards prescribed for use by the district
court.  *See Walker v. Thompson* 214 F.3d 615, 624 (5th Cir. 2000).

---

[5] *Rogers v. City of San Antonio, Texas*, 2003 WL 1571550
(W.D. Tex. March 24, 2003).

5

**Analysis**

1.

In order to decide how USERRA should be interpreted and applied in this case we will set forth an overview of the statute to give perspective to our reading of its parts. Because the statute is subject to different interpretations we will examine its legislative history, predecessor statutes, pertinent court decisions, and post-enactment administrative interpretations.

A. USERRA Overview

The purposes of USERRA, enacted in 1994, are: (1) "to encourage noncareer service in the uniformed services[6] by eliminating or minimizing the disadvantages to civilian employment which can result from such service"; (2) to provide for "the prompt reemployment" of persons returning to civilian jobs from military service and to "minimize the disruption [of their] lives...as well as [to those of] their employers, fellow employees and communities"; and (3) "to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301.

---

[6] "The term 'uniformed services' means the Armed Forces, the Army National Guard and the Air National Guard when engaged in active duty for training, inactive duty training, or full-time National Guard duty, the commissioned corps of the Public Health Service, and any other category of persons designated by the President in time of war or national emergency." 38 U.S.C. § 4303(16).

USERRA is the most recent in a series of laws protecting veterans' employment and reemployment rights dating from the Selective Training and Service Act of 1940.[7] USERRA's immediate precursor, the Veterans' Reemployment Rights Act (VRRA), was enacted as § 404 of the Vietnam Era Veterans' Readjustment Assistance Act of 1974.[8] "Congress emphasized [1] USERRA's continuity with the VRRA and its intention to clarify and strengthen that law. [2] Federal laws protecting veterans' employment and reemployment rights for the past fifty years had been successful." [3]"[T]he large body of case law that had developed under those statutes remained in full force and effect, to the extent it is consistent with USERRA."[9]

USERRA's anti-discrimination provision prohibits an employer from denying initial employment, reemployment, retention in employment, promotion, or any benefit of employment to a person on the basis of membership, application for membership, performance of service, application for service, or obligation of service. 38 U.S.C. § 4311(a). Also, an employer must not retaliate against a person by taking adverse employment action against that person

---

[7] *See* Proposed Regulation, Department of Labor, Veterans' Employment and Training Service, § 1002.2, 20 CFR Part 1002, Federal Register, Vol. 69, No. 181 p. 56286 (2004)("Proposed Regulation"). USERRA authorizes the Secretary of Labor to issue regulations implementing the Act with respect to States, local governments, and private employers. *Id.* at § 1002.4(b) at 56286. We cite these non-binding Proposed Regulations for their persuasive authority only.

[8] *Id.*

[9] *Id.*

7

because he or she has taken an action to enforce a protection afforded under USERRA. *Id.* at § 4311(b).

Any person whose absence from a position of employment is necessitated by reason of service in the uniformed services is entitled to the reemployment rights and benefits of USERRA. *Id.* at § 4312(a). The returning uniform services member ("reservist") seeking reemployment must make a timely return to or application for reinstatement in the reservist's employment position. *Id.* at § 4312(a)(3). The employee reporting back to the employer following a period of less than 31 days must report not later than the beginning of the first full shift on the first full day following the completion of service. *Id.* at § 4312(e)(1)(A)(i).[10] If the service period is between 31 and 180 days, the individual must report within 14 days of completion of service. *Id.* at § 4312(c). If the service was more than 180 days, the individual must request reemployment no more than 90 days after completion. *Id.* at § 4312(e)(1)(D).

An employer must promptly reemploy a person returning from a period of service if the person meets the Act's eligibility criteria. *Id.* at § 4312(f)(4). "Prompt employment" means as soon as practicable under the circumstances of the case. For example, prompt reinstatement after "weekend National Guard duty generally

---

[10] *See* Proposed Regulation, summary, 69 F.R. No. 181 at 56270.

8

means the next regularly scheduled working day."[11]  However, prompt reinstatement after "several years of active duty may require more time, because  [the] employer may have to reassign or give notice to another employee who occupied [the] position."[12]

In construing a precursor to USERRA, the Supreme Court in *Fishgold v. Sullivan Drydock and Repair Corp.*, 328 U.S. 275 (1946), invented the "escalator" principle in stating that a returning service member "does not step back on the seniority escalator at the point he stepped off.  He steps back on at the precise point he would have occupied had he kept his position continuously during the war." *Id.* at 284-285.  Although *Fishgold* was mainly a seniority case, the escalator principle applies to the employment position, and rate of pay, as well as the seniority rights to which the returning service member is entitled.[13]

Thus, USERRA requires that the service member be reemployed in the escalator job position comparable to the position he would have held had he remained continuously in his civilian employment.  38 U.S.C. § 4313.  After service of 90 days or less, the person is entitled to reinstatement in the position of employment in which she or he would have been but for the interruption of employment by

_____

[11] Proposed Regulation § 1002.181.

[12] *Id.*

[13] Proposed Regulation, summary 69 F.R. No. 181 at 56274.

uniformed service. *Id.* at § 4313(a)(1)(A).[14] If the service period was longer than 90 days, the service member is entitled to reemployment in the escalator position, but the employer may also reinstate the member in any position of like seniority status and pay for which he is qualified. 38 U.S.C. § 4313(a)(2)(A). If the service member is unable to qualify for either the escalator position or a comparable position, despite reasonable employer efforts, he is entitled to reemployment in a position that is the nearest approximation to the escalator position. *Id.* at § 4313 (a)(2)(A), (B).[15]

A person who is reemployed under USERRA is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the beginning of service plus the additional seniority and rights and benefits that he or she would have attained if the person had remained continuously employed.[16]

---

[14] *Id.*

[15] *Id.*

[16] Section 4303(12) of USERRA defines "seniority" as: longevity in employment together with any benefits of employment which accrue with, or are determined by, longevity in employment. The summary for USERRA's Proposed Regulations explains that:
    This definition imposes two requirements: first, the benefit must be provided as a reward for length of service rather than a form of short-term compensation for services rendered; second, the service member's receipt of the benefit, but for his or her absence due to service, must have been reasonably certain. *See Coffy v. Republic Steel Corp.*, 447 U.S. 191 (1980); *Alabama Power*

10

*Id.* at § 4316(a). This section states the basic escalator principle as it applies to seniority and seniority-based rights and benefits.[17] An employer is not required to have a seniority system. USERRA requires only that employers who do have a senority system restore the returning service member to the proper place on the seniority ladder.[18] An employee's rate of pay after an absence from work due to uniformed service is also determined by application of the escalator principle.[19]

USERRA does not grant escalator protection to service members' non-seniority rights and benefits but provides only that the employer treat employees absent because of military service equally with employees having similar seniority, status, and pay who are on comparable non-military leaves of absence under a contract, agreement, policy, practice, or plan in effect at anytime during that uniformed service.[20] § 4316(b)(1).

---

*Co. V. Davis*, 431 U.S. 581 (1977); *see also* S. Rep. No. 103-158, at 57 (1993), citing with approval *Goggin v. Lincoln, St. Louis*, 702 F.2d 698, 701 (8th Cir. 1983) (summarizing Supreme Court formulation of two-part definition of "perquisites of senority").
Proposed Regulation, summary 69 F.R. No. 181 at 56276.

[17] *Id.*

[18] *Id.*

[19] *Id.* At 56277.

[20] Proposed Regulation, summary 69 F.R. No. 181 at 56272 (interpreting § 4316(b)(1) to mean that "[i]f the employer has

11

### B. <u>Legislative History and Jurisprudence</u>

The nation's first peacetime draft law, the Selective Training and Service Act of 1940 was designed to provide reemployment for veterans returning to civilian life in positions of "like seniority, status, and pay." Pub. L. No. 54-783, § 8, 54 Stat. 885, 890 (1940). In 1951, Congress extended reemployment rights to reservists who had been called up from civilian jobs for active or training duty. Pub. L. No. 51, Ch. 144, § 1(s), 1951, 65 Stat. 75, 86-87. The Armed Forces Reserve Act of 1952 extended reemployment rights to National Guardsmen. Pub. L. No. 476, 66 Stat. 481. The Reserve Forces Act of 1955, Pub. L. 305, Ch. 665, § 262(f), 69 Stat. 598, 602, "provided that employees returning from active duty for more than three months in the Ready Reserve were entitled to the same employment rights as inductees, with limited exceptions." *Monroe v. Standard Oil Co.*, 452 U.S. 549, 555 (1981).

In 1960, these reemployment rights and benefits were extended to National Guardsmen. Pub. L. 86-632, 74 Stat. 467. *See* VRRA § 2024(c), *Monroe*, 452 U.S. at 549. A new section, VRRA § 2024(d),

---

more than one kind of non-military leave and varies the level and type of benefits provided according to the type of leave used, the comparison should be made with the employer's most generous form of comparable leave," and citing *Waltermyer v. Aluminum Co. of Am.*, 804 F.2d 821 (3d Cir. 1986); H.R. Rep. No. 103-65, Part I at 33-34 (1993); *Schmauch v. Honda of Am. Manufacturing, Inc.*, 295 F. Supp. 2d 823 at 836-39 (S.D. Ohio 2003)).

was also enacted in 1960 to protect employees who had military training obligations lasting less than three months. "This section provide[d] that employees must be granted a leave of absence for training and, upon their return, be restored to their positions 'with such seniority, status, pay, and vacation' as they would have had if they had not been absent for training." *Monroe*, 452 U.S. at 544.

VRRA § 2024(d) did not, however, protect reservists from discrimination by their employers in the form of discharges, demotions, or other adverse conduct between leaves of absence for training. In the years following its enactment discriminatory employment practices intensified. Congress responded with legislation codified as VRRA § 2021(b)(3) which, in pertinent part, provided that "[a]ny person who [is employed by a private employer] shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a reserve component of the Armed Forces."

Senate Report No. 1477 explained the purpose of § 2021(b)(3) as follows:

> Employment practices that discriminate against employees with reserve obligations have become an increasing problem in recent years. Some of these employees have been denied promotions because they must attend weekly drills or summer training and others have been discharged because of these obligations . . .The bill is intended to protect members of the Reserve components of the Armed Forces from such practices. . . . [Under it] reservists

13

> will be entitled to the same treatment afforded their coworkers not having such military obligations . . . . S. Rep. No. 1477, 90th Cong., 2d Sess., Reprinted in (1968) U.S. Code Cong. & Admin. News, pp. 3421, 3421.

The House Report similarly indicated that these were the purposes and effects of the legislation. H.R. Rep. No. 1303, 90th Cong. 2d Sess., 3 (1968). *See Monroe,* 452 U.S. at 557.

As the Sixth Circuit noticed in *Monroe v. Standard Oil Co.*, 613 F.2d 641, 646 (6th Cir. 1980), however, VRRA § 2021 (b)(3) was subject to two different interpretations:

> First, it can be read to mean that any time an employee's forced absence for reserve duty requires him to forgo a benefit that would have accrued to him only if he had been present for work, he has been "denied" an incident or advantage of employment "because of" his military obligation.

Or, it can be read to "merely require[] that reservists be treated equally or neutrally with their fellow employees without military obligations[,] and "[t]o meet this requirement, collective bargaining agreements and employment rules must be facially neutral and must be applied uniformly and equally to all employees." *Id.*

The Fifth Circuit and other courts adopted the first interpretation of VRRA § 2021(b)(3) by holding that, if the right in question is granted to all employees but is denied to a reservist solely because of his absence to attend to military obligations, the

14

reservist is denied an "incident or advantage of employment" because of an obligation as a member of a reserve component.[21]

In *West v. Safeway Stores, Inc.*, the Fifth Circuit construed § 2021(b)(3) "to require that employers, in applying collective bargaining agreements, treat reservists as if they were constructively present during their reserve duty in similar contexts." 609 F.2d at 150. The employee, a meat cutter, had contended that, since the collective bargaining agreement guaranteed a 40 hour work week and because the only reason that he was not receiving a 40 hour work week was due to his National Guard obligations, he was being denied an advantage of employment. The court agreed and held that the employer must provide him with his guaranteed 40 hour work week despite the fact that the collective bargaining agreement specifically provided that an employee's absence for weekend reserve or National Guard duty was excluded or negated from the guarantee.[22]

---

[21] *See West v. Safeway Stores, Inc.* 609 F.2d 147 (5th Cir. 1980), *Kidder v. Eastern Air Lines, Inc.*, 469 F. Supp. 1060 (S.D. Fla. 1978), *Carlson v. New Hampshire Dep't of Safety*, 609 F.2d 1024 (1st Cir. 1979) *cert. denied* 446 U.S. 913 (1980), *Hawes v. General Motors Corp.* 102 L.L.R.M. (BNA) 3041 (N. D. Ohio 1979), *Lott v Goodyear Aerospace Corp.* 395 F. Supp. 866 (N.D. Ohio 1975), *Carney v Cummins Engine Co.* 602 F.2d 763 (7th Cir. 1979) *cert. denied* 444 U.S. 1073.

[22] The Court noted that "[i]f employers could by agreement with unions require that workers be present in order to receive certain benefits, then reservists could never secure the benefits or advantages of employment which the Act was designed to

15

The Sixth Circuit in a virtually identical situation, involving a 40 hour work week guarantee, however, disagreed with *West*, holding that § 2021(b)(3) merely required that reservists be treated no differently than other employees who are absent for non-military reasons. *Monroe*, 613 F.2d 641. The employee's collective bargaining agreement right to work a 40 hour week, as in *West*, was contingent on the employee being present for work or arranging to switch shifts, as permitted by the agreement. Thus, the court held, because the employee was treated the same as his coworkers regarding absences and exchanging shifts, that right did not vest when the employee failed to do either, and the employer was required to do no more than grant him a leave of absence without pay to comply with his military reserve obligation. Further, the court found "nothing in the legislative history or the statute to support judicial invalidation of nondiscriminatory conditions precedent to employee benefits and adhere[d] to [its] belief that conditional benefits are protected by § 2021(b)(3) only to the extent that the conditions have been actually satisfied." *Id*. at 647.

The Supreme Court granted certiorari in *Monroe*, affirmed the Sixth Circuit's decision, and substantially agreed with its

protect." *Id.* at 150. In closing, however, the Court acknowledged that because the employer had conceded that it could accommodate West's schedule, it did "not reach the issue of whether accommodation or the alternative of compensation is impossible or unduly burdensome." *Id.*

16

reasoning. 452 U.S. 549. The Supreme Court concluded that the "legislative history... indicates that § 2021(b)(3) was enacted for the significant but limited purpose of protecting the employee-reservist against discrimination like discharge and demotion," by reason of reserve status. *Id.* at 559. Further, the Court found nothing in § 2021(b)(3) or its legislative history to indicate that Congress even considered imposing an obligation on employers to provide a special work-scheduling preference, but rather that the history suggests that Congress did not intend employers to provide special benefits to employee-reservists not generally made available to other employees. *Id. at* 561. Because the Supreme Court's interpretation of § 2021(b)(3) is contrary to the Fifth Circuit's decision in *West*, and the high court noted the "apparent inter-circuit conflict on this issue" between *West* and the Sixth Circuit's decision,[23] we conclude that *West*'s "constructive presence" interpretation was disapproved by *Monroe*.

After the Supreme Court's decision in *Monroe*, the Third Circuit, in *Waltermyer v. Aluminum Co. Of America*, 804 F.2d 821 (3d Cir. 1986), addressed whether a National Guardsman was entitled to pay for a holiday that occurred during his leave of absence for a two-week military training period. "The collective bargaining

---

[23] *Id.* at 551 n.1.

17

agreement limited eligibility for holiday pay to individuals who worked during that week, but exempted from that requirement persons in a number of categories who were absent for reasons beyond their control." *Id.* at 821. The agreement provided that full-time employees would receive pay for designated holidays if, during the payroll week in which the holiday occurs, the employee is at work; on a scheduled vacation; on a layoff under specified conditions; performing jury service; a witness in a court of law; qualified for bereavement pay; or absent because of personal illness and certain sick leave conditions apply. *Id.* at 822. Reading VRRA § 2021(b)(3) in light of the Supreme Court's decision in *Monroe*, the Court of Appeals concluded that "[t]he thrust of [that provision], according to the [Supreme] Court, was to prevent discrimination against reservists but not to grant them preferential treatment." *Id.* at 823. The court noted the similarities between the characteristics of absence from work required by the military obligation at issue and the absences of the exempted categories, viz., the absences were not generally of extended duration; and they were for reasons beyond the control of the absent employee. *Id.* at 825. Therefore, the court concluded, "relieving [National Guard members] on military leave from the work requirement merely establishes equality for National Guardsmen and reservists, not preferential treatment." *Id.* at 825. Thus, the court concluded, the plaintiff Guardsman had

18

established his right to holiday pay under § 2021(b)(3). Significantly, however, the court indicated that a scheduled vacation, which also was exempted from the work requirement, was not comparable to military leave. The court observed: "We realize a planned vacation is different from the other exceptions on the list. Vacation is earned time away from work, and this exception merely recognizes that an employee should not be prejudiced, in the form of lost holiday pay, for taking an earned vacation." *Id.* at 825 n.3.

The Senate report on the bill that became § 4316(b)(1) stated that it "would codify court decisions that have interpreted current law as providing a statutorily-mandated leave of absence for military service that entitles service members to participate in benefits that are accorded other employees. *See Waltermyer*, 804 F.2d 821; *Winders v. People Express Airlines, Inc.* 595 F. Supp. 1512, 1519 (D.N.J. 1984), *affirmed*, 770 F.2d 1078 (3d Cir. 1985)." S. Rep. 103-158 (October 18, 1993). The Report explained that:

> [A]n individual who serves in the uniformed services will be considered to be on furlough or leave of absence while in the service [and] will be entitled to the same rights and benefits not determined by seniority that are generally provided to the employer's other employees with similar seniority, status, and pay who are on furlough or leave of absence[,] under a practice, policy, agreement, or plan in force at the beginning of the period of uniformed service or which becomes effective during the period of service. *Id.*

19

The House Report declared that the bill had the same purpose and effect. The bill was described as providing for "[r]ights, benefits, and obligations of persons absent from employment for service in a uniformed service." H.R. Rep. 103-65(I)(April 28, 1993). The House Report elaborated:

> The Committee intends to affirm the decision in *Waltermyer v. Aluminum Co. of America*, 804 F.2d 821 (3d Cir. 1986) that, to the extent the employer policy or practice varies among various types of non-military leaves of absence, the most favorable treatment accorded any particular leave would also be accorded the military leave, regardless of whether the non-military leave is paid or unpaid. Thus, for example, an employer cannot require servicemembers to reschedule their work week because of a conflict with reserve or National Guard duty, unless all other employees who miss work are required to reschedule their work. *Cf. Rumsey v. New York State Dept. of Corr. Services*, 124 LRRM 2914 (N.D.N.Y. 1987). However, servicemembers are not entitled to receive benefits beyond what they would have received had they remained continuously employed.

*Id.* *See also* 139 CONG. REC. S 14865-03m, 1993 WL 444411 (Nov. 2, 1993); A NON-TECHNICAL RESOURCE GUIDE TO THE UNIFORMED SERVICES EMPLOYMENT AND REEMMPLOYMENT RIGHTS ACT (USERRA), U.S. DEP'T OF LABOR VETERANS EMPLOYMENT AND TRAINING SERVICE, 9 (March 2003).[24]

---

[24] That guide provides, in pertinent part, as follows:

> Rights not based on seniority Section 4316(b)[:] Departing service members must be treated as if they are on a leave of absence. Consequently, while they are away they must be entitled to participate in any rights and benefits not based on seniority that are available to employees on nonmilitary leaves of absence, whether paid or unpaid. If there is a variation among different types of nonmilitary leaves of absence, the service member is

20

Although the legislative history of the bill that became § 4316(b)(1) does not mention *Monroe*, Congress necessarily intended for that section to codify *Monroe*'s interpretation of § 2021(b)(3) with respect to the effects upon the non-seniority rights of uniformed service members by their absences from civilian employment by reason of their military obligations.  The reports of both the Senate and the House expressed an intention to codify *Waltermyer* in this respect.  *See* H.R. Rep. 103-65(I) (April 28, 1993), S. Rep. 103-158 (Oct. 18, 1993).  Thus, they necessarily indicated an intent to codify *Monroe*'s "equal, but not preferential" interpretation of VRRA § 2021(b)(3) which was adopted and followed by *Waltermyer*. Although *Waltermyer* applied the *Monroe* interpretation to enforce the employee's right to equal treatment, rather than the employer's right not to grant preferential treatment, *Waltermyer* could not be codified without including the *Monroe* interpretation that it adopted.

Conversely, USERRA's legislative history does not indicate that Congress intended to rely on § 4311(a)'s general discrimination ban to assure that reservist-employees on military leave receive

---

entitled to the most favorable treatment so long as the
nonmilitary leave is comparable.  For example, a three-
day bereavement leave is not comparable to a two-year
period of active duty.
*Id.*
*Available at:* http://www.dol.gov/vets/whatsnew/uguide.pdf.

21

benefits equal to those that other employees receive while taking comparable non-military leave. While new § 4316(b)(1)'s legislative history clearly reflects the intent to specifically guarantee reservists equality of on-leave benefits, the history of § 4311(a) shows an intent to continue and strengthen the anti-discrimination provision but not the specific goal of guaranteeing parity of benefits.

Further, the brief legislative history of the bill that became § 4311(a) reflects no intention to prohibit neutral labor contracts from treating employees on military leave equally with those on non-military leave with respect to the loss of benefits due to absence from work. The House report, in most relevant part, states that:

> Current law protects Reserve and National Guard personnel from termination from their civilian employment or other forms of discrimination based on their military obligations. Section 4311(a) would reenact the current prohibition against discrimination which includes discrimination against applicants for employment, (*see Beattie v. The Trump Shuttle, Inc.*, 758 F. Supp. 30 (D.D.C. 1991)), current employees who are active or inactive members of Reserve or National Guard units, current employees who seek to join Reserve or National Guard units (December 20, 2004 *Boyle v. Burke*, 925 F.2d 497 (1st Cir. 1991)), or employees who have a military obligation in the future such as a person who enlists in the Delayed Entry Program which does not require leaving the job for several months. *See Trulson v. Trane Co.*, 738 F.2d 770, 775 (7th Cir. 1984).

H.R. Rep. 103-65(I)(April 28, 1993). The Senate report likewise does not indicate that Congress intended to prohibit such neutral

22

labor contract provisions.  The report, in most pertinent part, provides:

> New section 4311(a) would specify the relationship to service that would bring individuals within the VRR law and also specifies the actions of employers that would constitute violations of that law.  Specifically, as to individuals, the section would provide that individuals who are members of, perform, have performed, apply to perform, or have an obligation to perform service in the uniformed services would be covered by the law. The section would provide that such individuals may not be denied initial employment, reemployment, retention, promotion, or any benefit of employment by an employer on the basis of the relationship to service.

S. Rep. 103-158 (October 18, 1993).

The legislative history of §§ 4311(a) and 4316(b)(1) does not mention *West*. 609 F.2d 147.  On the other hand, that legislative history expresses an intent to codify in § 4316(b)(1) the *Monroe-Waltermyer* line of cases with respect to non-seniority rights and benefits to which persons absent from civilian employment by reason of service in the uniformed services are entitled.  *West* is inconsistent with and was expressly disapproved by *Monroe* and *Waltermyer*.[25]  Therefore, we must conclude that USERRA's codification of *Monroe* and *Waltermyer* legislatively overruled *West*.

---

[25] *Monroe*, 452 U.S. at 551 n.1 (recognizing that the Sixth Circuit's opinion in *Monroe* conflicted with *West* and affirming the Sixth Circuit), *Waltermyer*, 804 F.2d at 821 (noting that *West* was "substantially weakened" by *Monroe*).

## C. Section 4316(b)(1) Governs This Case

Section 4316(b)(1) of USERRA provides that an employee who is absent from employment for military service is deemed to be on leave of absence and "entitled to such rights and benefits not determined by seniority...generally provided by the employer to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice or plan...." Reading § 4316(b)(1) together with § 4311(a) and other USSERA provisions, the legislative history, preceding statutes, and pertinent jurisprudence, we conclude that Congress intended by § 4316(b)(1) to clarify and codify the interpretation of VRRA § 2021(b)(3) by the Supreme Court in *Monroe* and the Third Circuit in *Waltermyer*, requiring employers, with respect to rights and benefits not determined by seniority, to treat employees taking military leave, equally, but not preferentially, in relation to peer employees taking comparable non-military leaves generally provided under the employer's contract, policy, practice or plan. Although, the "equal, but not preferential" requirement arose out of the Courts' interpretation of VRRA § 2021(b)(3)'s prohibition against denial of employment rights because of military obligations, which has been enhanced and continued by USERRA § 4311(a), Congress decided to adopt new § 4316(b)(1) to provide more specifically and affirmatively for the accrual of non-seniority rights and benefits

24

by employees while on military duty, rather than continue to rely on the general prohibition against service-related denials of benefits for that purpose.  Congress sought by § 4316(b)(1) to guarantee a measure of equality of treatment with respect to military and non-military leaves and to strike an appropriate balance between benefits to employee-service persons and costs to employers.  USERRA does not authorize the courts to add to or detract from that guarantee or to restrike that balance.

For these reasons, we conclude that the district court erred in deciding that § 4311(a), rather than § 4316(b)(1), must be applied in this case.  Because the district court gave several reasons for its interpretation, we will set them forth before commenting on each.

The district court decided that "[s]ection 4316 is inapplicable to this case[, because] it only applies to a person who is reemployed under this chapter or who is absent on furlough or leave of absence."[26]  The district court stated that § 4316 "is specifically tailored to apply to a reservist or veteran returning to employment from active duty rather than reservists...who have been away for relatively short periods [for] drilling and

---

[26] 211 F. Supp. 2d. at 838 (footnotes and internal quotations omitted).

training[.]"[27]     Furthermore, the court stated, "the anti-discrimination provisions (now § 4311(a-c), formerly, § 2021(b)(3)) were specifically added 'to protect the rights of reservists which had been found to be inadequately protected' under the provision cited by the City (§ 4316, formerly VRRA § 2024(d))."[28]  Concluding that this case should be analyzed and decided under USERRA's § 4311(a) anti-discrimination provision, the district court identified *West*, 609 F.2d 147, decided under VRRA § 2021(b)(3), as our Circuit precedent that must be applied in deciding claims under the USERRA for non-seniority benefits by employees returning from service in the uniformed services.[29]  The district court read *West* to hold that VRRA § 2021(b)(3) "requires that employers, in applying collective bargaining agreements which grant a benefit of employment based on 'presence' rather than on 'hours actually worked,' should treat reservists as if they were 'constructively present' during their reserve duty."[30]

We believe that the district court was mistaken in each of its reasons for deciding that § 4311(a) must be applied in this case

---

[27] *Id.*

[28] *Id.* (quoting *Carney*, 602 F.2d 763).

[29] *Id.* at 839 n.63, 841 n.82, 842, 844 n.106.

[30] *Id.* at 842.

26

and, consequently, also mistaken in using the *West* "constructive presence" theory to decide the firefighters' claims. We will discus the erroneous points of the district court's decision in the order set forth in its opinion.

First, § 4316(b)(1) is fully applicable to reservists' short absences from civilian employment for weekend drills or two-week annual training. In USERRA, the term "service in the uniformed services" means "the performance of duty on a voluntary or involuntary basis in a uniformed service under competent authority." 38 U.S.C. § 4303(13). It includes "active duty, active duty for training, initial active duty for training, inactive duty training, full-time National Guard duty," medical examinations to determine fitness for duty, and performance of funeral honors duty. *Id.* The term "uniformed services" means "the Armed Forces, the Army National Guard and the Air National Guard when engaged in active duty for training, inactive duty training, or full-time National Guard duty[.]" 38 U.S.C. § 4303(16). Thus, both of these terms apply to members of the uniformed services who participate in inactive duty training for weekend drills and two-week annual training. Consequently, § 4316(b)(1), which applies to "a person who is absent from a position of employment by reason of service in the uniformed

services" is fully applicable to reservists during their weekend and two-week military duty sessions.[31]

Second,"reemployment" is not formally defined in § 4303, but §§ 4312–4313, providing for USERRA reemployment rights and positions, plainly apply to "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services." 38 U.S.C. § 4312. As noted in the previous paragraph, the terms "service in the uniformed services" and "uniformed services" apply to "inactive duty training," which refers to reservists and their two week and weekend training periods. Further, USERRA makes specific provisions for the reemployment of a person whose period of service in the uniformed services was less than 31 days. 38 U.S.C. § 4312(e)(1)(A); 4313 (a)(1). Thus, a reservist who returns to his or her job after weekend drill is "reemployed" just as much as one who is reinstated after a period of service of two years.[32]

---

[31] *See Gordon v. Wawa Inc.*, 388 F.3d 78, 81 (3d Cir. 2004) (construing "service in the uniformed services" as applicable to a reservist's "weekend Reserve duties" with respect to his duty under USERRA § 4312(e) to report to his employer upon completion of his period of service).

[32] *See* Proposed Regulation, summary, 69 F.R. No. 181 at 56270 (explaining that employees are "reemployed" when they return to work after a weekend or two years) and 56274 (explaining that USERRA considers employees to be "reemployed" whether they are gone for more or less than 31 days).

Third, the district court mistakenly thought that VRRA § 2024(d) was the precursor of USERRA §4316(b)(1). However, USERRA §4316(b)(1) had no true predecessor and deals with a different subject (non-seniority rights of persons absent for military service) from VRRA § 2024(d) (reemployment rights). VRAA § 4301(b)(1) was somewhat similar to USERRA § 4316(b)(1) but not a true precursor. *See* S. Rep. 103-158 (1993). VRAA § 2021(b)(3) was added to protect against discrimination (such as punitive discharges, demotions, et. al.) not protected against by VRAA § 2024(d). *See* legislative history of USERRA , *supra*. Thus, VRRA § 2021(b)(3) was not added to cure a deficiency in a prior provision similar to USERRA § 4316(b)(1).

Finally, as we have noted, *West* and its "constructively present" theory of interpretation was disapproved by the Supreme Court in *Monroe* and legislatively overruled in the codification of *Monroe* and *Waltermyer* by USERRA § 4316(b)(1).

2.

Applying § 4316(b)(1) to the summary judgment record in this case, we conclude that the district court's judgment must be reversed and summary judgment granted for the City on the following claims: (1) lost straight-time pay; (2) lost overtime opportunities; and (3) missed upgrading opportunities. From our review of the

record we have determined that there is no type of non-military leave available to any employee under which an employee can accrue or receive the foregoing kinds of benefits. Hence, insofar as the record shows, there is no type of leave under which these benefits may accrue that is comparable to any military leave.

We further conclude that the district court's summary judgment with respect to: (1) bonus day leave; (2) perfect attendance leave; and (3) the twenty-seven hour cap on lost overtime must be reversed and the case remanded for further proceedings on these claims. There are genuinely disputable issues as to the material facts of whether involuntary non-military leaves, not generally for extended durations, for jury duty, bereavement, and line of duty injury leave (provided that the employee returns to work in the following shift), under which employees may accrue or receive bonus day leave and perfect attendance leave benefits, are comparable to each plaintiff's military leaves taken for service in the uniformed services. For the same reason, there is a disputable issue as to whether sick leave, under which employees receive the benefit of the twenty-seven hour cap for the first shift of sick leave they use, is comparable to military leave. Thus, we reverse and remand on this claim also.

We also conclude that the summary judgment in favor of Anthony Rogers must be reversed because the record does not contain adequate

30

evidence to support the judgment.  The City must be granted summary judgment on this claim.

3.

We must determine the period of time, pre-filing, during which damages accrued so as to be recoverable under USERRA.  The district court referred the issues regarding the statute of limitations, laches, and equitable estoppel to a magistrate judge and the parties consented to the magistrate judge's jurisdiction pursuant to 28 U.S.C. § 636(c) for that purpose.  The parties filed cross-motions for partial summary judgment.  The magistrate judge held that the four-year statute of limitations in 28 U.S.C. § 1658 applies to plaintiffs' causes of action and that plaintiffs' claims are not barred by the equitable defenses of laches or estoppel.[33]  The district court certified  this issue for appeal under 28 U.S.C. § 1292(b), and the City appeals the district court's holding.

Section 4323 of USERRA does not provide a time limit for bringing a claim for relief, stating only that "[n]o State statute of limitations shall apply to any proceeding under this chapter."  38 U.S.C. § 4323(I).  The City argues that this court should borrow the two-year statute of limitations contained in the Fair Labor Standards Act ("FLSA").  29 U.S.C. § 255(a).  However, the City's

---

[33] 172 L.R.R.M. (BNA) 2240, 2003 WL 1566502 (W.D. Tex. March 4, 2003).

argument that plaintiffs' claims are "strongly analogous" to FLSA claims is without merit. The City cites no case authority under USERRA or any previous statute governing veterans' employment and reemployment rights in which a court borrowed the FLSA statute of limitations. Furthermore, the purposes of the two acts are not similar. Congress passed the FLSA, pertaining to minimum wages and working conditions, for the purpose of improving nationwide labor conditions,[34] and USERRA for the purpose of encouraging military service by protecting uniformed service members' rights and benefits.[35] Plaintiffs' claims involve neither the violation of FLSA standards nor any similar standard. For these reasons, we reject the City's argument that we should borrow the two-year federal statute of limitations from the FLSA.

Plaintiffs presented arguments in both this court and the district court that 28 U.S.C. § 1658, the four-year uniform and general statute of limitations for federal causes of action not governed by an explicit statute of limitations, should apply. Alternatively, they now argue for the first time on appeal that no

---

[34]  29 U.S.C. § 202.

[35]  38 U.S.C. § 4301.

statute of limitations applies to USERRA claims and that their claims are not barred by either laches or estoppel.[36]

Because plaintiffs took the position before the magistrate judge that the four-year residual statute of limitations of § 1658 applied to their claims, and the court rendered judgment to that effect, plaintiffs have waived any claim to relief beyond four years prior to the date on which their complaint was filed.[37] Plaintiffs have thus limited their claim to relief and this court will not consider their argument that no statute of limitations applies.

The City also argues that regardless of the applicable limitations period for plaintiffs' claims, those claims are barred by the equitable doctrines of laches and estoppel. The district court determined that the plaintiffs' damages claims are not affected by those equitable affirmative defenses.

In order to invoke the doctrine of laches, the City must show an inexcusable delay in asserting a right and undue prejudice to the City as a result of that delay.[38] To invoke the doctrine of

---

[36] See, however, Proposed Regulations, summary, 69 F.R. No. 181 at 56281 ("The Department [of Labor] has long taken the position that no Federal statute of limitations applied to actions under USERRA.").

[37] *Vela v. City of Houston*, 276 F.3d 659, 678 (5th Cir. 2001)

[38] *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 668 (5th Cir. 2000); *Miller v. City of Indianapolis*, 281 F.3d 648, 654 (7th Cir. 2002) (applying laches to USERRA claims); *Wallace v. Hardee's of Oxford, Inc.*, 874 F.Supp. 374, 377 (M.D.

equitable estoppel, the City must show that it relied on a representation by plaintiffs, changed its position based on that reliance, and that it was prejudiced because of that change in position.[39]  Essential to both of those claims is a showing by the City that it was prejudiced by plaintiffs' failure to bring their claims earlier.  Because the district court properly found that the City did not introduce any summary judgment evidence either that any "delay" in plaintiffs asserting their claims was inexcusable or that the City was prejudiced by such delay, plaintiffs' claims are not barred by the equitable doctrines of laches or estoppel.

The City's only allegations of prejudice are that at least one of the named plaintiffs no longer works for the City, that potential witnesses may be retired or unavailable, and that the City had already fulfilled its monetary liability to Plaintiffs by paying them under the CBA.  Not only has the City presented no summary judgment evidence of such prejudice, but similar allegations of prejudice have been held to be insufficient in the USERRA framework.[40]

---

Ala. 1995) (invoking that same standard in the context of a USERRA claims).

[39] *Lauderdale County Sch. Dist. v. Knight*, 24 F.3d 671, 691 (5th Cir. 1994).

[40] *See Wallace*, 874 F. Supp. at 377 (employer not unduly prejudiced by the cost of defending VRRA suit now instead of earlier and by continuing to conduct its normal business

Considering that the plaintiffs limited their claims for damages to the four-year period before the filing of their suits in the district court and that the City has not shown that it was prejudiced because of an inexcusable delay on plaintiffs' part, we affirm the district court's ruling that plaintiffs' claims for damages, if any, were not barred but are limited to recovery of damages commencing on October 4, 1995, four years preceding the filing of their claim.

**Conclusion**

The district court's judgment on the statute of limitations, laches, and equitable estoppel claims is AFFIRMED.  Otherwise, the district court's judgment is REVERSED.  Judgment is rendered for the City dismissing plaintiffs' claims for (1) lost straight-time pay; (2) lost overtime opportunities; and (3) missed upgrading opportunities.  Judgment is also rendered for the City dismissing Anthony Rogers' individual claim.  The case is REMANDED for further proceedings on the plaintiffs' claims for (1) bonus day leave; (2)

---

operation); *Novak v. Mackintosh*, 937 F. Supp. 873, 880 (D.S.D. 1996) (no prejudice in VRRA claim when there was no evidence that the employer changed its position in any way that would have occurred if there had not been delay). The City's allegation that it will be prejudiced by having to pay additional compensation to Plaintiffs above the amount bargained for in the CBA between the parties is similarly not a sufficient allegation of prejudice, as Plaintiffs' right to recover in this case is governed by statute rather than the CBA. *Carney*, 602 F.2d at 763.

perfect attendance leave; and (3) the twenty-seven hour cap on lost overtime.